**UNITED STATES of America ex rel. Robert WATSON**

v.

**COMMON PLEAS COURT OF PHILA-DELPHIA, PENNSYLVANIA**

and

**A. T. Rundle, Warden.**

**Misc. No. 3393.**

United States District Court
E. D. Pennsylvania.
March 8, 1967.

Lawrence T. Hoyle, Jr., (Court-appointed), Philadelphia, Pa., for relator.

Charles A. Haddad, Asst. Dist. Atty., Philadelphia, Pa., for respondents.

## OPINION

JOSEPH S. LORD, III, District Judge.

■ Relator petitions for habeas corpus on the asserted ground [1] that certain evidence used against him at trial was the product of an unconstitutional search and seizure and, as such, ought to have been excluded. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). No objection was made at trial to the admission of this evidence, consisting of various articles which were identified as the subject of larceny. We held a plenary hearing in order to ascertain whether the failure to object constituted a "deliberate by-passing of state procedures," Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and, if it did not, whether the admitted search of Watson's apartment without a warrant was constitutionally impermissible.

■ We have concluded that the relator intentionally and purposefully abstained from raising the question of unconstitutional search and seizure at trial and that the petition must be denied.

### I.

On December 18, 1963 the relator was arrested for attempting to utter a forged check. At the time of his arrest, he was wearing a coat which was identified as having been stolen. He told the police that he had purchased the coat from one Frank Smith and offered to take the detectives to what he said was Smith's room at 712 South 16th Street in Philadelphia. Watson claimed that he himself lived at a completely different address, 1803 North 18th Street, but that he had stayed at the 16th Street address on one occasion. Watson had a key to the 16th Street apartment. He was escorted to the apartment by the police, whereupon he opened the door, entered the apartment, and came out with several articles later identified as stolen. With his permission, the police then entered the room and discovered additional stolen property.

At his trial on March 3 and 4, 1964, Watson consistently testified that the apartment on 16th Street was not his home, but the residence of Frank Smith and that he cooperated fully with the police, presumably because he had nothing to hide. At the same time, Watson's counsel, Alan M. Neff, Esquire, objected vigorously to any characterization of the searched premises as "Watson's" apartment, arguing that there was no proof that the premises were the abode of his client.

### II.

Quite clearly, trial tactics dictated that no objection to the evidence taken from the apartment be raised, for to do so would have required an admission that Watson was a resident, and not merely a one-time guest, at the 16th Street address thereby leading to the inference that he himself was responsible for the thefts evidenced by the stolen merchan-

---

1. Watson alleged several other bases for relief, including illegal detention, violation of his privilege against self-incrimination, and denial of counsel at sentencing. The state record discloses no factual predicate for these contentions, and since they are clearly without merit, they will be dismissed without hearing. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963).

dise at the apartment. Hence, instead of objecting to the admission of the seized property, relator's attorney sought to discredit the reference to "Watson's room" (State N.T. 21, 22, 26, 27, 31) and the resulting strong imputation of guilt. This strategy obviously failed to exonerate relator at trial.

We find it unnecessary to determine whether the apartment was Watson's or not; the inquiry is immaterial. Watson cannot now prevail by testifying in this court in direct contradiction to the explanation he offered at trial,[2] thereby presenting for the first time a constitutional issue which, if raised at the time of trial, would have conflicted with a carefully conceived and expertly[3] (if unsuccessfully) executed factual defense to the substantial evidentiary inferences of culpability which then confronted him.

Relator's able counsel in this court argues that because Watson did not realize that by adopting a different posture at trial he might have succeeded in excluding the damaging evidence, no "considered choice"[4] amounting to a "deliberate by-passing of state procedures"[5] could have been made. Counsel contends that had relator been aware of the Supreme Court's decision in Mapp v. Ohio, supra, his "choice" would have been influenced by the advantageous rule excluding evidence obtained in violation of the Fourth Amendment's prohibition against unreasonable search and seizure. We cannot accept this reasoning.

We have no doubt that Mr. Neff was familiar with the constitutional implications of an unreasonable search and that had Watson indicated that a search of his home had taken place without his con-

sent, his attorney would have objected appropriately before or during trial. The fact is that Watson told both his attorney (Habeas N.T. 10–12) and the trial court (State N.T. 48) that he allowed the police to search the apartment, all the while claiming that he did not reside there. Of course, we would not expect Neff to have suggested to Watson that if he changed his story to assert both ownership of the apartment and unauthorized entry by the police, he might have a better chance of escaping conviction. Having ascertained what his client stated to be the true facts surrounding both the alleged crime and the subsequent police inquiry, Neff was hardly bound to acquaint Watson with the nuances of criminal-constitutional procedure in order that a more palatable presentation might be fabricated for the trial court.

The relator here, "after consultation with competent counsel * * * understandingly and knowingly forewent the privilege of seeking to vindicate [in the state courts whatever] federal claims [a contrary statement of the facts by relator might have presented], * * * for tactical * * * reasons * * * that can fairly be described as the deliberate by-passing of state procedures * * *." Fay v. Noia, supra, 372 U.S. at p. 439, 83 S.Ct. at p. 849. It was Watson's "considered choice" to adopt a position which by its very nature foreclosed any possible inquiry into constitutional claims. No more blatant instance of a waiver of those claims can be imagined. Cf. United States ex rel. Parker v. Rundle, 259 F. Supp. 420 (E.D.Pa.1966); Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

2. Watson testified at the habeas corpus hearing that he shared the 16th Street apartment with Frank Smith (N.T. 32, 33) although he still insisted that the stolen articles were not his, but Smith's. (N.T. 49).

3. At the habeas hearing, Mr. Neff, relator's counsel at trial, admitted that he had had "ample time" to discuss the case with Watson before trial (N.T. 13); that under the facts of the case as they were

related to him by his client, he could see no constitutional objection to the seized evidence (N.T. 14, 15); and that his objections at trial were designed to establish that Watson was not in a position to have exercised dominion over the goods. (N.T. 19).

4. Fay v. Noia, supra, 372 U.S. at 439, 83 S.Ct. at 849.

5. Id.

Under the circumstances, we feel that the proper exercise of our discretion compels the denial of the petition.

The petition for habeas corpus is denied.

It is so ordered.

We express our deep appreciation to Lawrence T. Hoyle, Jr., Esquire, court-appointed counsel for relator, who, serving without compensation, has displayed exceptional professional competence and an exemplary devotion to the service of this court.