## Mullins v. Commonwealth.

Jan. 27, 1939.

CARL PERKINS for appellant.

HUBERT MEREDITH, Attorney General, and WILLIAM F. NEILL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant and Lawrence Yonts were jointly charged by true bill with the offense of shooting at another with a deadly weapon with intent to kill. Kentucky Statutes, Section 1166. They were jointly tried, but the court peremptorily directed the jury to find Yonts not guilty, since testimony showed that Yonts was not armed at the time of the shooting. The jury found appellant guilty and fixed the penalty at two years confinement in the penitentiary. Motion for a new trial was overruled, judgment entered according to the verdict and this appeal is prosecuted.

While setting out some ten or more grounds in support of motion for a new trial, appellant is here urging this court to reverse the judgment, because (a): The court should have directed the jury to return a not

guilty verdict; (b) of admission of incompetent evidence, and (c) the court failed to give to the jury instructions on shooting without wounding in sudden affray. Kentucky Statutes, Section 1242.

Melvin Holbrook, the complaining witness, with his family, lived on Puncheon Creek, in Knott County, his house being about thirty or forty feet from the county road. On the night of the rencounter several neighboring boys had gone to a "bean stringing" at the home of a neighbor, who lived below Holbrook's home, and in going from and returning to their homes had to pass his home. After the party broke up about midnight, the young men were returning to their homes, hallooing, singing, and one "picking" a guitar. Those leaving the party were in two groups, Mullins and Yonts in front, and three or four others a short distance in the rear. Just about the time, as is shown by the proof, when Mullins and Yonts were closer to Holbrook's home than those in the rear, two shots were fired at the house, one of the bullets going within a few feet of Holbrook while he was lying on the bed.

Holbrook, testifying on cross-examination, said that he arose, went out of the house and fired in the direction where some of the boys were gathered. Appellant admits that he fired back "towards the blaze," from what was evidently a shotgun in the hands of complaining witness. It is not exactly clear, but is deducible from the evidence, that Holbrook again fired, as did appellant. This is not an important circumstance, since it is clear from the indictment that this latter shooting by appellant was not the offense charged, or for which he was tried.

Holbrook said he knew the voices of both appellant and Yonts, and makes it clear that the shots were fired by one or the other of the two who were indicted. He also said that there was ill-feeling on the part of the two accused against him, because when he was an officer he had "turned them in to the magistrate for being drunk."

Other witnesses, some of whom were in Holbrook's home, testified as to the shooting at and into the house, and though none of them saw who fired the shot, they were familiar with the voices, and testified that the shots came from those of the party who were nearer to

and almost opposite the house. Holbrook recognized appellant's voice as they passed the house, the Mullins boy saying "he was a rounder and didn't give a damn for nothing." He also testifies that after the two shots were fired, appellant called out, "I am going to start me a G. D. nigger graveyard." One witness, who was with the parties in the rear of appellant and Yonts, heard a pistol shot or shots, and as he and his companions got nearer the house he heard more shots.

R. E. Holbrook, whose son was in the crowd in the rear, heard the shooting and went at once to look for his boy. Witness was standing by the side of the road and told appellant, "There is no use of that shooting," and appellant said that Melvin had shot at them and tried to kill them, and had tackled the wrong man. At this time the two crowds had gotten together above Holbrook's house. This witness described the shots heard, and makes it clear that the first report was from a smaller weapon, followed later by louder reports, and then again the smaller.

The evidence on the whole fails to disclose that any person in the crowd of five or six, save appellant, had a weapon. He was seen with his pistol immediately after the shooting. Appellant offered no testimony, other than his own. He had been to the "bean stringing" and left around midnight, in company with Yonts, and they were in advance of Millard and Albro Hall, and some other boys. He heard two shots from the rear, at a time when he was 30 or 40 yards from Melvin Holbrook's home. He did not know who did the shooting. He absolved Yonts by saying that he was not armed.

Appellant says that after the two shots were fired, he turned around and saw the blaze from a gun "near about Holbrook's house, and the shot went through a tree over my head and fell around us. When I heard those shots I allowed he was shooting at me." We might pause to query, why? He then returned the fire with his pistol, in the direction of the blaze from the gun. He denied that he had talked about doing Mr. Holbrook any harm that night, but did not fully deny that he had made the remarks attributed to him by other witnesses. He admitted the ill-feeling between the families.

When asked on cross-examination if he shot into

Holbrook's house, he said: "I don't know if I did or not," though it may be assumed that he had reference to his firing after Holbrook came out.

From the facts as above related, we have no difficulty in concluding that they were sufficient to take the case to the jury. It is true that no one saw appellant fire the shots, or any of them, particularly such as it is claimed went into or struck Holbrook's house. However, the physical facts and circumstances detailed are sufficient to show that either Mullins or Yonts did the firing. As to Yonts, it was shown that he had no weapon, and the proof is that appellant did have his pistol. His own proof shows that he not only had the weapon but that he fired it after Holbrook came out of the house.

When the evidence, even though it be circumstantial, affords fair and reasonable ground upon which the verdict of a jury might be rested, the case should go to the jury. It is only where the testimony in behalf of the commonwealth fails to incriminate the accused, or is wholly insufficient to show guilt, that an accused is entitled to a peremptory instruction. Such is not the case here.

The only complaint of incompetent and prejudicial evidence is to one question asked by the commonwealth's attorney. On cross-examination he asked appellant: "How long had you been out of the penitentiary before you had this trouble with Melvin Holbrook?" Objection to the question was overruled and witness answered: "I don't know how long it had been." It is argued that this question was asked for the purpose of prejudicing the jury. Such argument might carry weight, if it were not shown by the transcript that appellant had been asked if he had not theretofore been convicted of a felony, and he had answered in the affirmative.

We are clearly of the opinion that this question did not operate to the prejudice of appellant's substantial rights, particularly so when it was properly shown that he had formerly suffered conviction for a felony, and in answer to the particular question said he did not know how long he had been out. The question was irrelevant, under the facts here, though there might arise a case in which the facts might make such question relevant.

Appellant's final contention is that the court erred

to his prejudice in failing to give the whole law, it being insisted that an instruction should have been given on shooting at in sudden affray, as embodied in sec. 1242, Kentucky Statutes, which offense carries, on conviction, imprisonment in jail or a fine, or both, in the discretion of the jury. The argument by counsel is that the court should have given the instruction because "appellant shot in sudden affray, at a time when he thought he was in danger of bodily harm at the hands of the prosecuting witness, and did not shoot maliciously. Lewis v. Com., 156 Ky. 336, 160 S. W. 1061."

The case cited is not such authority as would authorize the giving of the sudden affray instruction. The failure to give it was not discussed, for the simple reason that such instruction was given. The complaint was of error in failing to give the common law assault and battery instruction, on the ground that it was a degree of the offense denounced by sec. 1166, Kentucky Statutes. We held no error, for obvious reasons clearly set out in the opinion.

We have held in a long line of cases, the latest perhaps being Gibbons v. Com., 253 Ky. 72, 68 S. W. (2d) 753, that the offense denounced by sec. 1242, Kentucky Statutes, is a lower degree of the one denounced by sec. 1166. However, a survey of the cases involving the question will clearly manifest that we have likewise strictly held that it is only proper to give it where the facts authorize it. Noral v. Com., 202 Ky. 318, 259 S. W. 706, and some six or eight cases cited in Gibbons v. Com., supra.

It is apparent that the facts of this case did not authorize or justify the giving of the instruction, the failure to give which was charged to be prejudicial error. Counsel bases his contention no doubt upon the theory or belief that appellant was indicted and tried for having shot at Holbrook after he (Holbrook) had stepped out of his house, fired at somebody he believed to be appellant. This is not the case as it was tried in the lower court, nor as presented to us on the record.

In the first place appellant (with another) was indicted under sec. 1166, it being alleged that he maliciously shot into the home of Holbrook with a deadly weapon with intent, etc. The entire proof adduced by the commonwealth tended to prove, and as the jury no doubt

believed, that appellant was the person who fired the shot or shots at Holbrook, in his home, at a time when it developed he was there.

It must be noted that on direct examination of the chief prosecuting witness, no word was said as to the shooting which appellant admitted, and claimed by him to be in his defense, after Holbrook had stepped from the house and fired. This latter shooting was brought out on cross-examination, perhaps for the purpose of endeavoring to confuse, or upon which to predicate a self-defense instruction. What we have said with regard to the testimony of Holbrook is common to each and every witness presented for the commonwealth, including one witness who was in the party returning home.

Appellant's sole defense to the indictment, as laid, is that he did not fire the shot. He undertook to inject into the case matter which was neither pertinent to nor charged in the indictment.

As we read the instruction, it demonstrates that the court, insofar as it related to the guilt of the defendant, limited the jury's consideration of such facts as were proven, and as charged in the indictment. In part it told the jury that if they believed from the evidence, beyond a reasonable doubt, that appellant in the man ner described in sec. 1166, Kentucky Statutes, "shot at Melvin Holbrook or any member of his family with intent, etc.," they should find him guilty. Assuredly so much of the instruction as is recited could have had reference to no other shooting than such as was charged in the indictment, except for the fact that the court erroneously, though not prejudicially, interpolated the words: "Not in his necessary, or apparent necessary self-defense."

The court then followed with advice to the jury as to what was their duty if they should believe from the evidence that appellant shot Holbrook "as charged in the indictment," in his necessary self-defense.

It may be conceded that under the facts adduced by the commonwealth, which, as we have pointed out, were directed solely to the offense charged in the indictment, the court should not have given any self defense instruction. The proof of the commonwealth did not justify such an instruction, because the indictment charged the shooting at Holbrook while he was in

his home, and the facts proven on this charge showed that Holbrook could not at the time have been offending appellant in any way. However, even if our concession be incorrect, it is our opinion that the self-defense instruction favored rather than prejudiced defendant, since it gave him an avenue of escape which he was not entitled to have opened to him.

We have here a case where the indictment clearly charged the offense denounced by sec. 1166, Kentucky Statutes, a fact which was known to appellant and his counsel. Also where the commonwealth proved, and limited its proof, to such facts as sufficiently established that offense. No reasonable-minded juror could have been misled into the belief that appellant was being tried on another offense which crept, or was brought into the trial for the purpose of building up an unauthorized defense.

Reviewing the facts presented, we cannot place this case in that class above mentioned, as one which would necessitate the giving of an instruction under sec. 1242, Kentucky Statutes, though not here deciding that if appellant's theory of the case is correct, he would have been entitled to such instruction.

Judgment affirmed.