Bennie **CISSELL**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 6, 1967.

James G. Apple, Paducah, for appellant.

Robert Matthews, Atty. Gen., Howard E. Trent, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Bennie Cissell appeals from a judgment sentencing him to two years in the penitentiary pursuant to a jury verdict finding him guilty of storehouse breaking. KRS 433.-190. The only ground asserted in support of a reversal is that the evidence is not sufficient to justify a finding of guilt.

The indictment charged the appellant and Troy Belt with having broken into the drycleaning establishment of W. D. Adams in Paducah, Kentucky, on or about December 5, 1966. The evidence was substantially as follows:

On the morning of December 6, 1966, when Adams opened his place for business he discovered that a goodly quantity of clothing had been removed during the preceding night. Access to the building had been gained through a small window nine to ten feet above ground level. The window was opposite the back of a dwelling occupied by Bennie Cissell's brother and sister-in-law, with whom Bennie made his home. The premises were so situated that one looking out this particular window of the drycleaning place would see the back porch of the Cissell house 60 to 75 feet away, with a fence separating the two properties. In the fence was a gate. It had rained during the night, and in the soft earth Adams observed two or more sets of footprints leading from his building to the Cissell residence through the gate.

Marie Dixon, a girl friend of Bennie Cissell, was staying at the Cissell place at the time in question. She testified that she was awakened when Bennie and Troy Belt came into the house at 2:30 or 3:00 A.M. In the morning, she says, she noticed that Troy was wearing a car coat she had never seen before, and she and Bennie were told by him "that there were clothes" in the house. After Troy had departed, taking the coat and a red sweater, she told Bennie to get the clothes out of the house or she would leave. At that time the clothes were in a closet, and Bennie moved them to a concealed place in the bathroom ceiling, saying he would leave them there "until the next night or until somebody came and got them."

As it developed, Bennie did not remove the articles from their place of concealment over the bathroom until more than a week later, when the police evidently had put the finger on Troy Belt. Joan Wright, a young lady who professed a kindly interest in Belt, then went to see Bennie at his place of employment as a taxi driver and asked him to give her the stolen clothes so that she might return them, hoping thereby to obtain some degree of clemency for Belt. Bennie at first demurred, saying the police "didn't know, or couldn't prove that they stole them, without the evidence." But Joan persisted, and Bennie agreed to get the clothes for her but she was not to tell where she got them. They went from the taxi office to the Cissell home where, after telling his sister-in-law "to go upstairs for a few minutes, that he had something to do," Bennie got a hammer from the kitchen and proceeded to remove the hidden clothing from the bathroom ceiling. Joan drove Bennie back to the cab station and then turned the articles in question over to the police. Among them were numerous items identified during the trial as having been stolen from the drycleaning place during the night of December 5–6, 1966. At some time later Bennie told Joan he could prove he was somewhere else if she told on him.

Joan testified also that one night while she and another girl were in a car with Bennie and Troy Belt at the cab company Bennie "told Troy to keep his mouth shut, that the less people knew about it the better off he and Troy would be."

Troy Belt testified that he had pleaded guilty to the storehouse breaking indictment and to an unrelated charge of forgery and had been sentenced to an aggregate of three years in prison. He claimed to have broken into the drycleaning place, taken the clothing, and concealed them in the Cissell house all by himself. He repudiated a written statement in which he had confessed to the police that he and Bennie had collaborated

in the commission of the crime. His explanation for this reversal was that he had lied in the hope of receiving lighter punishment.

Bennie did not testify or produce other defensive evidence. He contends that the evidence against him is circumstantial, is not inconsistent with a reasonable hypothesis of innocence, and raises no more than a suspicion of guilt.

It has been said many times that a "conviction may be had upon circumstantial evidence, but the circumstances shown must be so unequivocal and incriminating in character as to exclude every reasonable hypothesis of the innocence of the accused." Rose v. Commonwealth, Ky., 385 S.W.2d 202, 204 (1964), and cases therein cited. Another favorite expression is that "any evidence of substance which goes toward the establishment of guilt is sufficient to make a jury issue." Wheeler v. Commonwealth, Ky., 395 S.W.2d 565, 569 (1965); Parsley v. Commonwealth, Ky., 273 S.W.2d 372, 373 (1954), and cases therein cited. These sonorous and seemingly inconsistent incantations can be reconciled only when viewed in the context of the particular facts of the cases in which they appear. A simpler and more felicitous statement, and one which probably achieves a closer approach to reality, is found in Mullins v. Commonwealth, 276 Ky. 555, 124 S.W.2d 788, 790 (1939), as follows:

"When the evidence, even though it be circumstantial, affords fair and reasonable ground upon which the verdict of a jury might be rested, the case should go to the jury. It is only where the testimony in behalf of the commonwealth fails to incriminate the accused, or is wholly insufficient to show guilt, that an accused is entitled to a peremptory instruction."

■ Tested by any of these criteria the evidence in this case was amply sufficient to satisfy reasonable minds of Bennie's guilt. While it is possible that he *could* have said and done the things brought out in the evidence without having participated in the crime other than as an accessory after the fact, it seems extremely unlikely that he did. Without further explanation, his words and deeds were more consistent with guilt than innocence.

■ The contention is made that the evidence was not enough to convict Bennie as an accessory after the fact. An accessory after the fact is not an accomplice or principal, Reed v. Commonwealth, 270 Ky. 447, 109 S.W.2d 1198, 1199 (1937), and the crime is "a misdemeanor, an offense without degree, not dependent on the degree of the principal's crime, but only on his guilt of felony." Maddox v. Commonwealth, Ky., 349 S.W.2d 686, 689 (1961); KRS 431.170. Bennie was not indicted as an accessory after the fact and, accordingly, there was no instruction under which he could have been so convicted. He was indicted and convicted as a principal in the commission of the felony of storehouse breaking, and our review has been confined to the sufficiency of the evidence to sustain a conviction on that basis. We reiterate—it was sufficient.

The judgment is affirmed.

All concur.