**Ranzy MOORE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 17, 1969.

C. B. Upton, Williamsburg, J. Milton Luker, Luker, Luker & Roberts, London, for appellant.

John B. Breckinridge, Atty. Gen., Frankfort, David Murrell, Asst. Atty. Gen., for appellee.

NEIKIRK, Judge.

Appellant, Ranzy Moore, was convicted of voluntary manslaughter in the Whitley Circuit Court on April 29, 1968. His punishment was fixed at ten years in the state penitentiary. He appeals. We affirm.

Ranzy Moore, Stanley Manning, and Earl Jones met on August 21, 1965, at the home of Patsy Sears, mother of Ranzy. The three men sat on the front porch, talking, and added to their general feeling of well-being by drinking an undetermined amount of moonshine whisky. All became more than a little drunk. Earl became convinced that his watch had been stolen. In no uncertain terms he accused his socializing friends of the theft. In fact, it is claimed he drew his knife on Ranzy. Patsy came out of the house two or three times to remonstrate against all the loud talking, arguments, and growing hostilities. The affair became explosive. Ranzy and Stanley rushed into the house. Patsy, standing in the front door, was unceremoniously brushed aside. The three entered a bedroom, and it was there that Stanley was killed by a shotgun, its load striking him full in the face and forehead.

The appellant, Ranzy Moore, was indicted, tried, and found guilty, by a jury, of the slaying. The only eyewitnesses to the fatality were Ranzy, his mother Patsy, and possibly Earl Jones. We do not have the benefit of Earl's view of what happened. Earl has not been seen or heard from since he was released by the authorities at the conclusion of the investigation. Ranzy's testimony does not help us, as he claims he "blacked out" as he entered the front door and could remember none of the details of the events until after the officers came and arrested him, and this "vaguely."

At the trial Patsy gave a full accounting of the happening.

Appellant claims that the judgment of his conviction should be reversed for two reasons: (1) The court erred in not directing a verdict of acquittal, and (2) the verdict of the jury is not sustained by sufficient evidence and is contrary to the law and the evidence, and is the result of passion and prejudice.

We find that the trial court did not commit error in refusing to give the appellant, Ranzy Moore, a directed verdict of acquittal. Ranzy's mother, Patsy, testified that as Ranzy and the decedent, Stanley Manning, entered the bedroom Ranzy obtained a gun; that Stanley took this weapon from Ranzy; that Ranzy then grabbed another gun, a 20-gauge shotgun; and that Stanley took hold of the barrel and Ranzy held the butt of the gun. Patsy testified that, "Earl Jones come in, ducked under the gun on the left side of Ranzy. He grabbed the gun barrel in his hand and reaches up and he pulls the trigger." Upon being questioned further, Patsy said, " * * * I seen Earl pull the trigger. * * *." Ranzy, the only other eyewitness, claimed he "blacked out" before this all took place.

Appellant urges that the testimony of the only eyewitnesses, his mother and himself, was not sufficiently rebutted to present a jury question. We do not agree.

■ Tommy Manning, brother of the deceased, arrived immediately after the shooting. He was asked, "What, if anything, did Ranzy Moore say there to you?" He said, "Oh, Lord, what have I done."

Amos Manning, father of the deceased, soon arrived. He testified, in part, as follows:

"Q. When you got in there, what did you see?

A. Ranzy Moore setting in the living room, on the couch, and Earl Jones was asking him what did he do it for. I went on across them and into the back room to see whether the boy was dead or not. I seen he was instantly killed.

Q. What did you then do?

A. I turned and walked back to the middle door and Ranzy looked up at me and said, 'I'm the one done the damn shooting.' "

This same witness stated that Ranzy Moore and Jones were in the middle room when he came into the house, and "Jones was begging to him what did he do it for."

Trooper Harold West, in response to the question "Did the defendant there, Mr. Moore, say anything about who did the shooting?" answered, "As I recall it, Earl Jones was accusing Ranzy of taking a watch from him, or stealing one from him, and they were cursing each other over that, and then Earl Jones told Ranzy, said, 'You killed the wrong man, Ranzy, and you know you did. You meant to kill me.' Ranzy said, 'Yes, I did.' They wanted to fight each other on the way to jail. That was the reason we left the scene immediately with them was to get them under control so we could complete our investigation."

Patsy Sears, the eyewitness upon whom Ranzy so heavily relies, denied making certain statements to Trooper West that were incriminating to Ranzy. The testimony of Trooper West was sufficient to partially destroy the credibility of Patsy.

■ Appellant insists that he was entitled to a directed verdict of acquittal, as the evidence created only a suspicion of guilt and was not so unequivocal and incriminating in character as to exclude every reasonable hypothesis of the innocence of the accused. In response to the same con-

tention, we said in Cissell v. Commonwealth, Ky., 419 S.W.2d 555 (1967):

"It has been said many times that a 'conviction may be had upon circumstantial evidence, but the circumstances shown must be so unequivocal and incriminating in character as to exclude every reasonable hypothesis of the innocence of the accused.' Rose v. Commonwealth, Ky., 385 S.W.2d 202, 204 (1964), and the cases therein cited. Another favorite expression is that 'any evidence of substance which goes toward the establishment of guilt is sufficient to make a jury issue.' Wheeler v. Commonwealth, Ky., 395 S.W.2d 565, 569 (1965); Parsley v. Commonwealth, Ky., 273 S.W.2d 372, 373 (1954), and cases therein cited. These sonorous and seemingly inconsistent incantations can be reconciled only when viewed in the context of the particular facts of the cases in which they appear. A simpler and more felicitous statement, and one which probably achieves a closer approach to reality, is found in Mullins v. Commonwealth, 276 Ky. 555, 124 S.W.2d 788, 790 (1939), as follows:

'When the evidence, even though it be circumstantial, affords fair and reasonable ground upon which the verdict of a jury might be rested, the case should go to the jury. It is only where the testimony in behalf of the commonwealth fails to incriminate the accused, or is wholly insufficient to show guilt, that an accused is entitled to a peremptory instruction.' "

We find there was ample evidence to justify submission to the jury. Burke v. Commonwealth, Ky., 249 S.W.2d 764 (1952); Mason v. Commonwealth, Ky., 357 S.W.2d 667 (1962); Johnson v. Commonwealth, Ky., 403 S.W.2d 36 (1966).

 Appellant argues that his uncontroverted evidence of insanity rebutted the presumption of his sanity, and that he was entitled to a directed verdict of not guilty. Evidence was offered and received as to his past medical history. The jury heard all the evidence. The question of insanity of appellant at the time of the commission of the act was an issue of fact to be determined by the jury. Newsome v. Commonwealth, Ky., 366 S.W.2d 174 (1963); Sharp v. Commonwealth, 308 Ky. 765, 215 S.W. 2d 983 (1948).

Upon consideration of the whole case, we are satisfied that the substantial rights of the appellant were not prejudiced. RCr 9.-24, 9.26.

We find the verdict of the jury is sustained by the law and the evidence.

The judgment is affirmed.

All concur.