**Billy NORTON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 1, 1971.

H. M. Shumate, Thomas D. Shumate, Shumate, Shumate & Flaherty, Irvine, for appellant.

John B. Breckinridge, Atty. Gen., Laura L. Murrell, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

Charged with the murder of Jesse Johnson, Billy Norton was convicted of voluntary manslaughter and sentenced to imprisonment for 21 years. He advances the following charges of error: (1) The verdict is flagrantly against the evidence, and without evidence to support it; (2) incompetent evidence was admitted; (3) the instruction on voluntary manslaughter should not have been given; and (4) improper argument was made by the Commonwealth's Attorney.

On May 6, 1969, at approximately 10:30 p. m., Jesse Johnson was assassinated as he alighted from his car in the driveway by his home in West Irvine. There was no direct evidence as to the identity of his slayer. The victim's fifteen-year-old son and another young man, who later married decedent's daughter, were standing nearby when the fatal shots were fired. The shots appeared to come from a lot on which Johnson had parked some heavy equipment. Decedent was in an area well illuminated by a floodlight. The shots came from a darkened place, and neither of the two young men with the slain man saw the killer.

The evidence for the Commonwealth presented the following circumstances, which the appellant maintains are insufficient to support a verdict of conviction against him. It is unnecessary to recount countervailing evidence presented by the appellant.

Two witnesses, Mr. and Mrs. James Grace, testified that appellant came to their home about 6:30 p. m. on the day of the homicide. Mr. Grace and appellant swapped automobiles. Incident to the trading of cars, appellant removed a gun from the car he traded to Grace, along with some shells or cartridges. He placed the cartridges, which appeared to be shiny brass, in his pocket but tossed on the ground a small cartridge case which Mrs. Grace retrieved. That case was presented in evidence. Both Mr. and Mrs. Grace testified that Norton, the appellant, appeared to be "drinking." Each of them declared that Norton made reference to the alleged mistreatment of Norton's father by Johnson (the victim). Mrs. Grace testified as to her recollection of Norton's statement:

"Well, Bill (Norton) said that Jesse (Johnson) had pushed his daddy around that day, and he said, 'Nobody pushes my daddy around and gets away with it;

I'm going to kill him,' and he was cussing."

Mr. Grace's testimony on that point was only slightly different. After relating that Norton told of Johnson's mistreating Norton's father that day, allegedly in company with another man, Mr. Grace testified:

"He said that they drawed a gun on his daddy and pushed him around, that he couldn't help himself, that he was sick, and something ought to be done or there was no excuse for it, stuff like that.

\* \* \* \* \* \*

"Said that he (Johnson) ought to be took out and killed."

The Graces said that Norton told them, as he left, that he was going to gig fish.

Norton presented an alibi defense, saying that he had been gigging fish from about 9:00 p. m. on May 6, 1969, until approximately 3:30 a. m. the next morning. With him he said, were G. B. and Raymond Kelly. They corroborated this alibi testimony. However, there was some countervailing evidence in this respect. A witness testified that he saw Norton at Gumm's Restaurant about 9:00 p. m. that night. Norton denied being at the restaurant at that time.

For reasons not disclosed in the record, two state troopers who were investigating the crime scene went to Norton's home about 3:00 a. m. on May 7th, but found that he was not there. They talked to Norton's father. A few days later, Norton sent word to the state troopers that he had learned of their quest for him, and invited an interview.

State Trooper Babb, in company with two other officers, interviewed Norton on May 13th, at which time Norton said that he was innocent of the killing of Johnson. He told the officers he had been fishing on Buck Creek (about eight miles from the crime scene) with *three* Kelly brothers. At the trial, Bill Kelly, one of the three, testified that Norton had offered him a bribe to swear he was fishing with him at the time in question. Norton and the other two Kelly brothers said that Bill had not gone fishing because Bill was too drunk. Norton explained that he had previously fished with all three of the Kelly brothers, and that his earlier statement was an understandable lapse of his memory.

At the same interview, according to Officer Babb, Norton denied that he had ever owned a 30–30 caliber rifle. The proof showed that Norton had purchased a 30–30 caliber Marlin lever-action rifle in Lexington on April 18, 1969.

Norton's version of this apparent discrepancy was that Officer Babb asked him whether he had ever owned an M–1 rifle, to which he truthfully replied that he had not. He further related that the officer asked him whether he "now owned" a 30–30, or other high-powered rifle, to which he truthfully answered "no," because he had sold the Marlin before the interview and before Johnson was shot.

Norton denied he had made threats toward Johnson, or even discussed him with Mr. and Mrs. Grace. He denied undertaking to bribe Bill Kelly to support his alibi. He asserted that he and Johnson were "friends," and that no ill will existed between them, despite a showing that Norton had appeared before a grand jury which indicted Johnson and others for allegedly "ambushing" Norton with a gun.

At about 10:15 a. m. on May 7th, attorney Eugene Watson (who assisted in the prosecution of this case, as county attorney of Estill County) pointed out to State Trooper Sims two spent cartridge cases of 30–30 caliber. Officer Sims said that the same area had been searched earlier in darkness, without discovery of the empty cartridge cases. By innuendo, at least, the defense suggests that these cases were "planted" at the scene, but there was no direct proof of it. The cartridge cases were found at a point 144 feet from the spot where Johnson fell mortally wounded. These two shells were examined by a tech-

nician qualified in ballistics, who compared them with a third shell, the source of which will later appear. The technician testified that the three shells bore identifiable markings from the breech-face and firing pin of the weapon from which they were fired which enabled him to say that all three of them were fired from the same firearm.

The third cartridge found its way into the evidence in this manner: Over repeated objections, City of Irvine Policeman Lloyd Lynch was permitted to testify that on June 4, 1969, Jerry Riddell came to the police station and handed him "two or three empty cartridges" from "some type of rifle," the caliber of which was unknown to Officer Lynch. Lynch testified that Riddell told him that he, Riddell, "got them down in a wooded area over at Pea Ridge" where "Billy Norton and some more of them" had been practicing with firearms. It was not claimed that any of the cartridges were known to have been fired by Norton, nor was any effort made to identify the "others" by name or as to how many there were. For some unexplained reason only one of the "two or three" cartridges was delivered by Lynch to the state trooper who sent it to the laboratory for examination. Riddell testified before Officer Lynch did, but denied having seen Lynch or having given him "anything," as will more fully appear.

■ The foregoing lengthy recital of facts has been made to furnish a foil upon which to examine the claim that the evidence was insufficient to warrant submission of the case to the jury. Many times the court has confronted the task of deciding whether circumstantial evidence in a given case is sufficient to make a submissible issue. As examples, see Hodges v. Commonwealth, Ky., (decided September 24, 1971); Fugate v. Commonwealth, Ky., 445 S.W.2d 675; Cissell v. Commonwealth, Ky., 419 S.W.2d 555; Mullins v. Commonwealth, 276 Ky. 555, 124 S.W.2d 788; and the cases cited in those opinions. The court has no hesitancy in holding, as it does, that the evidence in the present case, though circumstantial, affords fair and reasonable ground upon which the jury's verdict may be posited. The chain of circumstances, considered in light of the many incriminating instances of Norton's having to "explain" or flatly deny credible evidence against him, is sufficiently strong to support the jury's verdict. Hence, the first ground of error asserted is found to be meritless.

■ The second basis urged for reversal relates to claimed error in the admission of evidence. The court finds that reversible error was committed respecting the reception of Officer Lynch's testimony concerning the "two or three" cartridges brought to him by Riddell. The Commonwealth argues that the rule announced in Jett v. Commonwealth, Ky., 436 S.W.2d 788, demonstrates the admissibility of Lynch's evidence. So it would, except for failure to lay a proper foundation for contradiction of Riddell. CR 43.08. In Jett the court expressly noted that the foundation prescribed by CR 43.08 must be laid before the principle of Jett may become operative. Owsley v. Commonwealth, Ky., 458 S.W.2d 457, 463; Benson v. Commonwealth, Ky., 463 S.W.2d 122, 124. The only attempt at laying the foundation required by CR 43.08 is found in these questions and answers in Riddell's testimony:

"D 5 On or about the 4th day of June, 1969 did you see Officer Lloyd Lynch of the Irvine Police Department?

A Can't say that I did.

D 6 On June 4th or on or about June 4th, 1969, did you give him something?

A No.

D 7 Where were you on June 4th of 1969?

A It'd be hard to say."

It will be observed that no question was asked Riddell as to any statement he made

or conversation he had with Officer Lynch.

CR 43.08 spells out just what is required in order to lay the foundation for introduction of a prior inconsistent statement of a witness. It provides:

"Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning it, with the circumstances of time, place, and persons present, as correctly as the examining party can present them; and, if it be in writing, it must be shown to the witness, with the opportunity to explain it. * * *."

The "it" of which inquiry must be made is the alleged prior statement. No such inquiry was made here. The requirements of the rule were not met. As noted in Robinson v. Commonwealth, Ky., 459 S. W.2d 147, 149, there is a valid reason for the law's requirement that a "warning" or "foundation" be laid as a predicate for proving prior inconsistent statements. The rule of Jett may not be applied without compliance with its plainly stated prerequisites. Compliance with CR 43.08 is one of those prerequisites. In light of the circumstantial evidence in this case, the court is not willing to speculate that the irregularity in the admission of Lynch's testimony was nonprejudicial.

■ There is no merit in the appellant's assertion that the expert testimony concerning the scientific examination of the cartridges should have been excluded. The integrity of the cartridges was shown and the expertise of the witness sufficiently developed.

■ The appellant's contention that the giving of a voluntary manslaughter instruction was error is groundless. The proof concerning Norton's "drinking" coupled with the evidence of his prior difficulties with Johnson, his expressed threats, and his outcries against Johnson's alleged mistreatment of his father were adequate to form the basis for the instruction on voluntary manslaughter. See Cottrell v. Commonwealth, 271 Ky. 52, 111 S.W.2d 445; Harris v. Commonwealth, Ky., 389 S.W.2d 907; Grissom v. Commonwealth, Ky., 468 S.W.2d 263.

■ The final ground of charged error relates to the closing argument for the Commonwealth. It is unnecessary to burden the opinion with the complaints in this respect, since the court deems them unobjectionable, and clearly nonprejudicial. However, upon another trial, the attorney for the Commonwealth will avoid reference to the time and trouble caused him and the special judge because of the defendant's plea of not guilty.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.