Daniel **RUPARD** and Dieter Sierp, Appellants,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 29, 1971.

Rehearing Denied Feb. 18, 1972.

---

Frank G. Gilliam, Bing I. Bush, Gilliam & Bush, Anthea Mary Boarman, Lexington, for appellants.

John B. Breckinridge, Atty. Gen., David Murrell, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

Daniel Rupard and Dieter Sierp were found guilty of possessing marijuana for the purpose of sale or disposal to another. The jury fixed the penalty of each of them at confinement in the penitentiary for four years and a fine of $3500. They seek reversal of the judgment of conviction, asserting that (1) evidence was improperly admitted against them; (2) the evidence for the Commonwealth was insufficient since an inference was based upon an inference; (3) a directed verdict of acquittal should have been given since the evidence was entirely circumstantial and insufficient; and (4) prejudicial statements were made by the Commonwealth's attorney in his closing argument to the jury.

Information was received by the law enforcement officials in Clark County relating to possible violation of the Narcotic Drug Act (KRS Chapter 218) at an abandoned house located in a remote section of Clark County on a farm owned by Siegal Todd. On the morning of July 27, 1970, a detective of the Kentucky State Police and the Clark County Sheriff entered the house and found marijuana spread out on the floor on sheets in two of the rooms. This marijuana was in the process of being dried. In another room the officers saw four bags of marijuana which had been stripped from its stems and placed in plastic bags. Nearby on a stairway the officers observed a set of postage scales suitable for weighing light articles such as packages of marijuana.

After the officers had left during the middle of the day, they returned to the scene at about 5 p. m. to conduct a surveillance. About 8:30 p. m. they observed the defendants driving toward the house along the somewhat isolated gravel roadway. When the defendants saw the officers' car, they sought cover behind some bushes. One of the officers watched the two defendants approach the house and go upon the side porch as if to enter the house. The officer was unable to see whether either of the men actually entered the house, inasmuch as his line of vision was obstructed by reason of the physical contour of the area. The appellants make much of the fact that one of the officers indicated that he did not see the defendants go upon the porch of the house, but they overlook the fact that this officer explained that he was crouched upon the floor of the automobile in order to leave the impression that he and his fellow officer were "parkers" rather than officers.

The officers went to the parked car of the defendants and awaited their arrival, which occurred approximately twenty minutes after the defendants were seen to go upon the porch of the house.

As soon as the defendants entered their car, the officers approached them and arrested them. In plain view on the ledge above the dashboard was a plastic bag containing marijuana. (It was not one of the bags which the officers had seen earlier at the house.) The officers testified that they gave each of the defendants the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. The detective testified: "I asked the boys what was in the package and they said 'grass.' I said, 'marijuana' and they said, 'yes.'" The officer related that he could hardly hear what Rupard was saying because Sierp was waving his arms and telling the sheriff to shoot him. Both the detective and the sheriff testified that Sierp gave the appearance of being "high" and irrational. Neither of the officers detected the odor of any alcohol. The officers then returned to the house with the two defendants in custody and discovered that there were then five bags of marijuana rather than the four which they had seen earlier. Additionally, they noted that the scales had been moved from the position in which they had been earlier. The officers said that they did not observe anyone at or near the premises during the day except the defendants.

The first assignment of error relates to the claim by the appellants that it was improper for the trial court to permit the introduction into evidence of the five bags of marijuana and the substantial quantity of unprocessed marijuana which was found in the house. The appellants base their argument in this respect on their contention that there was no proof that either of them had possession of the marijuana, as denounced by KRS 218.020. In support of that contention the appellants cite State v. Hood, 89 Mont. 432, 298 P. 354 (1931); Haley v. State, 7 Md.App. 18, 253 A.2d 424 (1969); and People v. Jackson, 23 Ill.2d 360, 178 N.E.2d 320 (1961). In the three cases cited by the appellants, the court found that the facts presented were not sufficient to support a finding that the defendants had actual or constructive possession of the contraband drugs. However, those cases recognized the usual rule that the term "possession" need not always be actual physical possession and that a defendant may be shown to have had constructive possession by establishing that the contraband involved was subject to his dominion or control. A general annotation on the subject, "What Constitutes 'Possession' of a Narcotic Drug Proscribed by Section 2 of the Uniform Narcotic Drug Act," appears at 91 A.L.R.2d 810, et seq. There are many cases cited in 91 A.L.R.2d 810, et seq., and the Later Case Service for that annotation, in which constructive possession of narcotics has been held to be sufficient and in which the evidence was deemed adequate to support a finding of constructive possession. Some of those cases are Moody v. United States, C.A.9, 376 F.2d 525; People v. Holt, 28 Ill.2d 30, 190 N.E.2d 797; Stewart v. State, 1 Md. App. 309, 229 A.2d 727; Speaks v. State, 3 Md.App. 371, 239 A.2d 600.

■ The circumstances presented in this case support a rational inference that these appellants had constructive possession and probably actual possession of the marijuana which was found in the abandoned farmhouse. The owner of the house testified that he had not authorized either of the appellants to use the house. One of the officers saw the appellants go upon the porch of the house as if to enter; both of the officers saw the appellants coming from the direction of the house to their car and noted that one of them appeared to be deeply affected as if under the influence of a narcotic drug. Marijuana was found in their automobile in plain view. When the officers returned to the house, they discovered that another batch of marijuana had been bagged and the scales had been moved from the position where the officers had seen them earlier. These circumstances suffice to support the rational inference that these appellants indeed had

dominion and control of the marijuana in the abandoned house; hence, it was appropriate for the trial court to admit the contraband material in evidence.

The discussion just completed sufficiently answers the second and third points of error asserted by the appellants. It is not necessary to pile an inference upon another inference in order to sustain the conviction in this case. The appellants' reliance upon Pengleton v. Commonwealth, 294 Ky. 484, 172 S.W.2d 52, is misplaced. In Pengleton, Kate Pengleton's conviction of stealing chickens was reversed. The evidence showed that four hens owned by Herman Peters disappeared on a Sunday afternoon. The next day the hens were bought by a merchant who said that Ralph Smith came to the store, accompanied by Kate Pengleton and her thirteen-year-old daughter, Marie. Smith was carrying two of the hens and Marie had the other two. Smith, who had been living with Kate for a year or more although she was married to someone else, testified that he stole the chickens and that Kate had no part in it. The only evidence to link Kate with the theft was the fact that she walked into the store with Smith and her small daughter who had the hens in their hands. The court noted that possession of stolen property is sufficient to cast on the accused the burden of explaining that fact and that the jury may believe or disbelieve such explanation. However, the court noted that since Kate never had actual possession and there was no circumstance from which it could be deduced that she exercised any control or dominion over the stolen property or that she received any part of the proceeds of its sale, it was impermissible for the jury to indulge an inference from Kate's actions that she was in the possession of the stolen property and then indulge the additional inference from the inferred possession that she was guilty of the theft. That situation does not obtain in this case, as a review of the facts already discussed indicates.

For the same reasons the argument that there was insufficient circumstantial evidence to sustain the verdict is without merit. For recent discussions of the general rule pertaining to the sufficiency of circumstantial evidence to sustain a conviction, see Hodges v. Commonwealth, Ky., 473 S.W.2d 811, decided September 24, 1971; Cissell v. Commonwealth, Ky., 419 S.W.2d 555; and Mullins v. Commonwealth, 276 Ky. 555, 124 S.W.2d 788. It is evident that the totality of the circumstances presented in this record affords fair and reasonable ground upon which the verdict of the jury might be rested. In these circumstances the evidence is sufficient.

The appellants complain of remarks made by the Commonwealth's attorney during his closing argument. The first excerpt from the argument at which complaint is directed is as follows:

"I care about the kids out there in Clark County who are not on drugs. I care about people who have marijuana to dispose for that purpose. (Objection overruled.) I want to save the children in our community. I am asking you to help us."

Another excerpt from the argument is:

"People in this county and community look to see what occurs and if we can't enforce our laws and make the people sit down and sit down hard on drug pushers and abusers, it won't be too long until our kids, fourteen and fifteen year olds, start on it and they will move up the ladder. Please help us stop this. Thank you."

(No objection to this comment was noted of record.) Another portion of the argument to which objection was made and sustained is:

"When they return Mr. Rupard is high on pot. I mean Sierp, wild, waving his

arms about saying kill me. He knew about his pot and marijuana. He has been on it. You can tell that with reference to this testimony this boy has developed quite a good habit and doesn't care too much about infecting other people with it."

Another portion of the argument of which appellants complain is:

"In this case if you didn't have enough facts to decide this case and that the defendants are guilty, this case wouldn't be given to you. The Judge would take it away from you."

No objection was made to that argument.

■ The court is of the view that all of the argument with the possible exception of the last-quoted portion was proper argument and did not exceed the bounds of propriety in such cases. The reference to the fact that the judge would have directed a verdict if the evidence was insufficient was primarily in response to the argument in behalf of the defendants challenging the sufficiency of the evidence. As noted, no objection was made to the comment. The statement was literally true, but opens an area which should not have been injected into the case by the Commonwealth as an original proposition. A somewhat similar comment was contained in Martin v. Commonwealth, 255 Ky. 529, 75 S.W.2d 13, but that portion of the argument in Martin was merely one of many flagrant departures from propriety in the argument of the Commonwealth's attorney. In the circumstances of this case, the court perceives no prejudicial error in the argument or any of the excerpts which have been noted.

The judgment is affirmed.

All concur.