James FISHER and Gregory
Cotton, Appellants,

v.

Anthony DUCKWORTH and Grisanti,
Inc., Appellees.

No. 86–SC–1032–DG.

Supreme Court of Kentucky.

Sept. 3, 1987.

Rehearing Denied Nov. 25, 1987.

ness. Grisanti filed an Answer which was essentially a general denial of the allegations of the Complaint, which included, *sub silentio,* denying the allegation that Duckworth was an employee on Grisanti's business at the time of the collision. Grisanti filed no cross-claim against Duckworth.

Duckworth was never served and no pleadings have been made on his behalf. If he is before the Court, it is by reason of his voluntary appearance at a deposition that took place about a year after suit was filed and shortly before trial. Originally this deposition was arranged for Danville, Illinois, Duckworth's address after Grisanti fired him in March of 1983. But, ultimately, Duckworth came back to Louisville voluntarily to give the deposition at the request of the appellants' counsel.

On direct examination at his deposition, Duckworth testified to facts indicating that he was using Grisanti's vehicle within the scope of permitted use in his employment at the time of the collision; that he had made a detour from the usual route to attend a personal matter, but that this was an authorized deviation, with the knowledge and permission of his supervisor. This deposition was recorded on videotape, and later introduced by the appellants as evidence at trial.

On cross-examination at the deposition, Grisanti's attorney asked Duckworth if he remembered "giving a statement to a fellow by the name of Mr. Tom Rose on or about February 17, 1983." This would have been almost twenty-one months before the deposition. Duckworth acknowledged making such a statement over the telephone, and further acknowledged that this was "an oral statement of the events surrounding this accident." Grisanti's attorney asked no further questions concerning the contents of the statement, nor did he confront Duckworth with any portions of it that were contradictory to his testimony on deposition, and, on redirect by appellants' attorney, Duckworth's answers indicated no memory of saying anything to Rose significantly different from his deposition testimony.

Donald H. Smith, Smith & McGee, Louisville, for appellants.

Joseph C. O'Bryan, Mary Elizabeth O'Bryan, Louisville, for appellees.

LEIBSON, Justice.

On February 2, 1983, in Louisville, Kentucky, appellants, James Fisher and Gregory Cotton, were occupants of an automobile involved in an intersection collision with a station wagon operated by Anthony Duckworth. Duckworth was an employee of Grisanti, Inc., and had been entrusted with the vehicle to go to the airport and pick up fresh fish for Grisanti's business, and then to deliver it to Grisanti's Sixth Avenue Restaurant, after which he was to return the vehicle to the parking lot of a different Grisanti restaurant at another location.

Fisher and Cotton sued Duckworth and Grisanti, Inc., for personal injuries, alleging that Duckworth was on Grisanti's busi-

As it turned out, Rose was an insurance adjuster in the employ of Grisanti's liability insurer. At some point during the course of the telephone conversation between Rose and Duckworth, with Duckworth's permission, Rose turned on an audio-tape machine and tape recorded a question and answer interview. At trial this recorded statement was introduced into evidence upon Rose's identification, over objection. At one important point it contradicted Duckworth's deposition testimony that he had permission from his supervisor to deviate from the scope of his employment to use Grisanti's vehicle on a personal errand as he was doing at the time that the accident occurred. On the tape Duckworth answered "No" to the question, "Did the people at Grisanti's know you were going to move a mattress?"

The critical issue on this appeal is whether this prior inconsistent statement should have been admitted. Appellants contend that this statement was not admissible because Grisanti's attorney had not complied with Civil Rule 43.08, which "requires a party to lay a foundation before attempting to impeach a witness by showing that he has made different statements at another time." Bertelsman and Philipps, *Kentucky Practice*, Civil Rule 43.08, p. 115 (4th ed. 1984). On the other hand, Grisanti contends that the inquiry made of Duckworth at the time of the deposition was sufficient foundation under CR 43.08, or, in the alternative, that because Duckworth was named by the appellants as a defendant in the lawsuit, his audio-taped statement qualified as an admission of a party, making it unnecessary to have previously confronted Duckworth with the substance of the statement or question him directly about prior inconsistencies.

At the conclusion of trial the court directed a verdict against Duckworth.[1] Pursuant to this directed verdict the jury awarded Fisher a verdict against Duckworth in the total sum of $28,387.20, and Cotton a verdict against Duckworth in the total sum of $16,822.17. Thereafter, the trial court

entered judgment on the verdicts against Duckworth.

In answer to a special interrogatory, the jury found that Duckworth was on his personal business and beyond the scope of his employment for Grisanti at the time of the collision. Accordingly, the appellee, Grisanti, was exonerated, and the final judgment dismissed the claim against Grisanti.

The Court of Appeals affirmed the judgment. We have accepted discretionary review, and reverse.

■ The Court of Appeals affirmed based on a misunderstanding of the decision of our Court in *Schaible v. Uhl*, Ky., 343 S.W.2d 578 (1961). In *Schaible* our Court upheld the admissibility of the plaintiff's "written and signed pre-trial statement ... which tended to exonerate Uhl [the defendant] of blame and was contradictory of his [plaintiff's] testimony on the trial." *Id.* at 579. In response to the complaint that there had been no "preliminary inquiry" as required by CR 43.08, we stated:

"The simple answer is that the statement was not an impeaching document, but evidence of an admission against interest by a *party*." (Emphasis original). *Id.*

■ The decision in *Schaible* was a proper application of a rule of evidence covering "admissions of a *party-opponent*." (Emphasis added). *See* McCormick, *The Law of Evidence*, Ch. 26 (3rd ed. 1984); 4 Wigmore on Evidence §§ 1048–1087 (Chadbourne rev. 1972). To be properly understood it is important to note that the term "admission against interest," as used in *Schaible*, is a misnomer. The correct terminology, as noted above, is "admissions by a party-opponent," which is sometimes shortened to "admissions," but *always* understood as limited only to the issues between the party making the admissions and an opposing party in the lawsuit. The right of a party to introduce into evidence the admissions made by an *adverse* party, "are the product of the adversary system, sharing, though on a lower

---

1. No one made an issue as to whether the court had jurisdiction *in personam* over Duckworth, who, as previously noted, was never summoned in this lawsuit.

and nonconclusive level, the characteristics of admissions in pleadings or stipulations." McCormick, *supra* at § 262, p. 775. This rule covers admissions by silence or conduct, and judicial admissions, as well as evidential admissions. *McCormick, supra.* The reference in *Schaible* to the rule regarding use of "admissions" as an "admission against interest" is not only technically erroneous, but misleading, because it confuses the elements of this rule with elements of a distinctly different rule of evidence, the use of "declarations against interest," which, when admissible, applies to statements by any witness, whether or not a party, but has other limitations. *See* McCormick, *supra* at Ch. 27.

█ There are three separate and distinct rules regarding the admissibility of evidence which must be understood in arriving at an understanding as to whether Duckworth's statement was admissible against the appellants. These three rules are:

1) Admissions by a party-opponent.

2) Declarations against interest by a witness.

3) The use of a witness's prior contradictory statement to impeach, and as substantive evidence under *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969).

In each case, to qualify for admissibility it is necessary to meet those standards set up for the particular rule. We have no rule of evidence that permits one to make a goulash, jumbling elements from different rules, and thus to qualify evidence as admissible which would not otherwise qualify under any of these separate rules.

The rules of evidence have evolved carefully and painstakingly over hundreds of years as the best system for arriving at the truth. They bring to the law its objectivity. Their purpose would be subverted if courts were permitted to disregard them at will because of an intuitive perception that to do so will produce a better result in the case at hand. We accept the premise that obeying these rules is the best way to produce evidence of a quality likely to produce a just result. We reject the notion of different rules for different cases because one or the other of the litigants insists that a different ruling will produce a better result in his particular case. Changes in the rules are both inevitable and desirable, but changes should occur only after a judicious Darwinian process.

The particular rule critical to the issue before us, for reasons that will be discussed, has come to be known rather reverently as the Rule in *Queen Caroline's Case*. We quote from McCormick, *supra*, Ch. 5, § 37, pp. 78–79 "Examination of Witnesses":

"In 1820 in the answers of the judges in *Queen Caroline's Case*, it was announced: 'If it be intended to bring the credit of a witness into question by proof of anything he may have said or declared touching the cause, the witness is first asked, upon cross-examination, whether or not he has said or declared that which is intended to be proved.'"

But, before we test the evidence at issue against the Rule in *Queen Caroline's Case*, as it now applies under Kentucky Civil Rule 43.08, it is necessary to discuss the two rules that have been confusingly injected into the argument of the issue before us.

## I. ADMISSIONS OF A PARTY–OPPONENT

A proper understanding of this rule is set out in the Commentary on the "Evidentiary Admissions" exception to the hearsay rule in Lawson, *The Kentucky Evidence Law Handbook*, § 8.10 (2d ed. 1984), Lawson states as follows, in pertinent part:

"An extrajudicial statement of a party is ... admissible *if offered by a party-opponent*.... [This Rule] simply allows for the introduction in evidence of statements made outside the courtroom by a litigant. Such statements, if relevant to the action *and inconsistent with the declarant's claim or defense*, are admissible without any additional showing by the offering party.... Admissions are not admissible against a declarant's coparty." (Emphasis added).

■ Lawson explains that such evidence (the "admission") does not depend for its admissibility upon "satisfaction of the foundation requirements of Civil Rule 43.-08"; indeed, it is not even necessary to call one's opponent as a witness, or to introduce his deposition, before offering the admission, because the rationale for the use of such evidence is not that it is a prior inconsistent statement, but that it is "inconsistent with the declarant's claim or defense." As such it is not truly an exception to the hearsay rule, and is more accurately classified as non-hearsay, as done in the Federal Rule of Evidence. F.R.E. 801(d) states that a "statement is not hearsay if [an] admission by [a] party-opponent." The Advisory Committee's note goes on to explain that "admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule."

■ Lawson points out why, despite "frequent characterizations of ["admissions"] as 'admissions against interests,'" this is a misnomer because the admissions rule is different in character and purpose from the hearsay exception for declarations against interest in certain circumstances. The statement offered as an admission can *only* be offered against another who is *both* the declarant and an adverse party.

A Kentucky case squarely in point is *Newark Insurance Co. v. Bennett*, Ky., 355 S.W.2d 303 (1962). This was a declaratory judgment action seeking to avoid coverage under a liability insurance policy on grounds that there had been a change of ownership of the automobile before the occurrence of the accident as to which coverage was in question. The brother-in-law of the named insured was driving the car at the time of the accident, and had made the statement that he had purchased the automobile prior to the accident. We held that "the statement in question, even if accepted as a judicial admission against Bennett [the brother-in-law], could not be binding on the Mays [the accident victims]." *Id.* at 304. The court stated:

"The general rule is that the admissions of a party are not admissible against his coparties unless they consent thereto, adopt the statements as their own, or there is 'privity' between the party making the admission and the coparties." *Id.*

The court then quotes from 24 American & English Encyclopedia of Law, 2nd Ed., p. 747 that "[t]he fact that two parties as litigants ... happen to be interested in proving or disproving the same facts creates no privity between them." *Id.*

■ Thus understood, it is clear why the alleged statement in the present case does not qualify as an admission as was the case in *Schaible v. Uhl, supra.* The alleged statement was not being introduced by Grisanti in a claim or defense against Duckworth. Duckworth was not Grisanti's adversary at this trial. The appellants were. Had this issue been raised by pleadings, and tried by Grisanti against Duckworth, or vice versa, his "admission" could then have been used against Duckworth, but even then *only* against Duckworth and not against the appellants, Fisher and Cotton. They are not in privity with Duckworth and are not bound by his admissions. *See also Motorists Mutual Ins. Co. v. Hunt*, Ky. App., 549 S.W.2d 845 (1977) and *Jack Cole Co. v. Hoff*, Ky., 274 S.W.2d 658 (1954).

## II. DECLARATIONS AGAINST INTEREST

■ This exception is discussed in the Federal Rules of Evidence, at Rule 804(b)(3); in McCormick, *supra* at Ch. 27; and in Lawson, *supra* at 8.40. Under these authorities, before an extrajudicial statement can be introduced as a declaration against interest, there must be a showing that the witness is unavailable at the time of trial, and there must also be a showing by either the inherent nature of the statement or by other proof that the declarant knowingly made statements which were "against the declarant's interest when made." As stated in Saltzburg & Redden, *Federal Rules of Evidence Manual,* (4th ed. 1986), p. 940:

"Whenever a statement against interest is offered, it is the job of the Trial Judge to determine whether the declarant was under the impression that the statement was against his interest at the time he made it.... to examine all of the circumstances under which the statement was made and then to determine which facts were known to the declarant. These findings require the taking of considerable evidence in some cases."

■ In the present case, of course, even if we are to assume the unstated and as yet unproved, that Grisanti's liability insurance coverage did not extend to Duckworth if he was operating the station wagon beyond the scope of his employer's business, it would take an extraordinary leap of logic to assume that Duckworth would know this when he was talking to Rose, the insurance adjuster. We have no proof that Duckworth was a person sufficiently familiar with insurance law to know that the insurance coverage for Grisanti's vehicle might not extend to him if he had deviated from the scope of his employment to perform a personal errand. To the contrary, we note that at the time of the telephone conversation between Duckworth and Rose, Duckworth was employed by Grisanti, that he was an unskilled laborer, and that he was talking to his employer's insurance adjuster. The record does not show what conversation took place before the recorder was turned on.

As stated in McCormick, *supra*, Ch. 27, Declarations Against Interest, § 276, "the declaration must state facts which are against the pecuniary or proprietary interest of the declarant." [2] "[T]he interest involved must not be too indirect or remote." In the circumstances in which this statement allegedly was made, it is fair to state that if Duckworth had any knowledge or understanding of how it related to his "pecuniary" interest, this would be decidedly "indirect or remote." This exception to the hearsay rule takes the "safeguard of special trustworthiness," which is the justification for making it a hearsay exception,

from the fact that the declarant knows when he makes the statement that it is against his pecuniary interest. That justification for admissibility is not established here. The burden is on the party seeking to use this exception to the hearsay rule to first establish a basis for doing so.

### III. PRIOR CONTRADICTORY STATEMENTS

■ CR 43.08, which covers the use of prior contradictory statements, is the present codification for Kentucky of the rule in Queen Caroline's Case, stating as follows:

"Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning it, with the circumstances of time, place, and persons present, as correctly as the examining party can present them; ..."

The rule is offered as a method of impeachment. However, Kentucky has extended the rule to permit prior inconsistent testimony, when admissible, to be considered as substantive evidence as well as impeachment under the so-called "Jett" doctrine. *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969). It may be used as substantive evidence in civil cases as well as criminal cases. *Tri-City Van & Storage, Inc. v. Slone*, Ky., 437 S.W.2d 211 (1969). It may be used when the witness has been confronted with the prior contradictory statement at deposition as well as when this confrontation takes place at trial.

But "[t]he rule of *Jett* may not be applied without compliance with its plainly stated prerequisites," which means compliance with the requirements for laying a foundation in CR 43.08. *Norton v. Commonwealth*, Ky., 471 S.W.2d 302, 306 (1971). In *Hall v. Hamlin*, Ky., 484 S.W.2d 853 (1972), wherein the witness was confronted with a prior contradictory statement at a deposition which was later used in evidence, this foundation requirement was fully complied with—"[the witness] was cross-examined ... regarding certain statements,

---

**2.** This has been extended to include declarations against penal interests. See F.R.E. 804(b)(3)

and in Kentucky, *Crawley v. Commonwealth,* Ky., 568 S.W.2d 927 (1978).

inconsistent with his deposition, allegedly made by [the witness] shortly after the accident ... [and] categorically denied any such inconsistent statements." *Id.*, at 854.

Grisanti argues that it was enough to have the witness acknowledge that a statement was taken, and unnecessary to confront him with the substance of the statement, i.e., what he said in the statement that is supposedly contradictory to his present testimony. This position is flatly contradicted by the language of CR 43.08 which requires that the witness be "inquired of concerning it," referring back to the "different statement" previously made. As stated in McCormick, *supra*, § 37, Impeachment:

"... the cross-examiner will ask the witness whether the witness made the alleged statement, giving its substance, and naming the time, the place, and the person to whom made.... If the witness denies the making of the statement, or fails to admit it, but says 'I don't know' or 'I don't remember' then the requirement of 'laying the foundation' is satisfied and the cross-examiner, at the next stage of giving evidence, may prove the making of the alleged statement."

*White v. Piles*, Ky.App., 589 S.W.2d 220 (1979) is a Kentucky case squarely in point. The Court of Appeals reversed because the party offering a prior contradictory statement from a pre-trial deposition had not confronted the witness with the substance of his statement when counsel had the opportunity during his trial testimony. The court stated:

"... where a witness has made a prior sworn statement which is arguably contradictory, he is especially entitled to have that fact pointed out to him and to be afforded an opportunity to explain the inconsistency." 589 S.W.2d at 223.

The second sentence of CR 43.08 provides for limited circumstances in which the court may relax the foundation requirement "when it is impossible to comply with this Rule ... and when the court finds that the impeaching party has acted in good faith." Bertelsman & Philips, *Ky. Practice, supra* at 115, explains:

"The Rule contains an important exception. A party may be permitted to introduce impeaching evidence when a foundation can not be laid for contradiction because of the absence of the witness. The purpose of this provision is to avoid undue hardship in the event the witness has been examined by deposition and prior contradictory statements made by him may not have been known at the time of the taking."

This language in the second sentence of CR 43.08 is the Kentucky equivalent of the so-called "interests of justice" clause in F.R.E. 613(b), the Federal rule for impeachment of witnesses by proof of a prior inconsistent statement. It is explained in 3 Weinstein's Evidence, p. 613–9, as follows:

"The 'interests of justice' clause permits the admission of statements which under the orthodox rule were completely barred if the party did not learn of the prior inconsistent statement until after the witness ceased being amenable to the court's jurisdiction since the foundational questions could not then be asked."

The "interests of justice" exception to the foundation requirement of the Rule in Queen Caroline's Case appears to have been sponsored by Wigmore and McCormick, who favor permitting the judge, in his discretion, to dispense with the foundation requirement "where the putting of the question has become impossible and the impeaching party has acted in good faith." 3A Wigmore on Evidence, § 1027, pp. 1022–23 (Chadbourne rev. 1970). McCormick, *supra* at § 37, makes it clear that this "interests of justice" exception to the foundation requirement should *not* be utilized except where there is proof of good faith and "lack of knowledge of the inconsistent statement on the part of the impeacher when [the witness was] cross-examined."

This textbook discussion of the "interests of justice" exception to the foundation requirement in CR 43.08 does not support the use of Duckworth's allegedly prior inconsistent statement in the present case. On the contrary, it negates it. Grisanti's counsel had full knowledge of the prior audio-

taped statement with which he intended to contradict Duckworth at the time when Duckworth's deposition was taken. Indeed, he alluded to the fact that he had such a statement while concealing its substance and its contradictory nature. In these circumstances Grisanti's counsel is not in a position to request that the foundation requirement in CR 43.08 should be waived in his case.

Therefore, because of trial error in the admission of key evidence which should have been excluded the within case is reversed and remanded for a new trial on all issues.

STEPHENS, C.J., and LAMBERT and VANCE, JJ., concur.

WINTERSHEIMER, J., files a dissenting opinion in which GANT and STEPHENSON, JJ., join.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent because there was no reversible error in permitting the jury to evaluate all the evidence.

A trial is a search for the truth. The majority opinion requires almost 4,000 words to justify an appellate decision which prohibits the admission of important evidence and thereby obscures the judicial truth-seeking process.

This erudite and expansive essay on evidence results in excluding from the jury important facts necessary in the true truth-seeking process. Indeed it provides only half of the truth for the jury to evaluate. The majority labors long and hard to explain the simple question why it refuses to allow the jury to consider *all* the evidence. There is a lack of lucid legal reasoning to support the attenuated result.

The majority mixes an unpalatable stew of legal Darwinism and the early Nineteenth Century rule of Queen Caroline's case in a fruitless effort to satisfy the inherent appetite for the truth that characterizes all juries.

Fifteen days after the accident, Duckworth gave a statement to a claims adjuster in which he said that he was on personal business at the time of the accident. However, more than a year later, Duckworth gave a videotape deposition in which he stated that he was on company business when the accident occurred. At trial, both the videotaped deposition and the audiotape statement were admitted into evidence. The jury found that the person who apparently caused the accident was not in an employment or agency relationship with Grisanti at the time of the accident.

The most that could be argued is that technically the Court of Appeals erred in finding that the audiotape was presented as substantive evidence, rather than impeachment evidence. It is doubtful that the resolution of this question could change the result in this case. There was certainly no reason to accept discretionary review of this case and the majority opinion compounds that mistake.

*Schaible v. Uhl*, Ky. 343 S.W.2d 578 (1961) is clearly dispositive of the matter. It determined that a pretrial statement made by one of parties which tended to exonerate the defendant and was contradictory to that of the later testimony of the plaintiff was not an impeaching document but was evidence of admission against interest by a party and was admissible as substantive evidence. This new interpretation of the law of evidence implies that an ordinary person must be a student of the law to understand what is against his own interest. The majority improperly speculates on Duckworth's knowledge or lack of knowledge and is an extraordinary leap of reasoning.

The efforts of the majority to distinguish *Schaible, supra*, are unconvincing. The attempt to ignore Duckworth as a party is also without legal merit and unrealistic in view of the fact that his apparent negligence was the direct cause of the accident and he was personally sued by the victim. He is certainly before the court even though he may be in default by reason of his failure to answer the claim against him. It could be argued that Duckworth had a substantial interest in entirely shifting or

at least sharing the burden of liability with his employer.

It is curious to note that the dissent in *Commonwealth v. Reneer*, Ky. 734 S.W.2d 794 (1987) laments the fact that alleged half-truths relative to the absence of parole information but is now apparently satisfied and seeks to actively restrain the access of the jury in this case to all the evidence and thereby impede arriving at the whole truth. It is difficult to discern a consistent pattern of legal philosophy in comparing the dissent in *Reneer, supra,* and the majority here.

The majority grudgingly admits that the interest of justice exception permits the trial judge to have discretion in regard to certain foundation requirements. However, in an effort to discount this acknowledged exception, the majority incorrectly attributes to counsel for Grisanti a lack of good faith. It does not find that the trial judge abused his discretion.

The trial court and the Court of Appeals correctly followed the established law in this situation. The direct result of the new rule promulgated by the majority is that the jury will now have access to only half of the evidence which it needs to seek the truth.

GANT and STEPHENSON, JJ., join in this dissent.