**UNITED STATES of America ex rel. Robert HENDERSON**

v.

**Joseph R. BRIERLEY.**

No. 4302.

United States District Court
E. D. Pennsylvania.

June 16, 1969.

Clifford H. Swain, court-appointed Philadelphia, Pa., for relator.

James F. Heinley, Asst. Dist. Atty., Lancaster County, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, District Judge.

Relator was convicted by a jury of six counts of burglary and larceny on March 28, 1967 in the Lancaster County Court of Quarter Sessions, December Term, 1966, on Bill of Indictment No. 285, and sentenced to serve five to ten years in prison. He attacks his conviction on two grounds: (1) that evidence introduced at his trial was unconstitutionally seized as a result of (a) a search warrant issued without probable cause, and (b) an improperly conducted search;[1] (2) he was denied the effective assistance of counsel. The Commonwealth concedes that relator has exhausted his state remedies, and we agree.

We ordered a hearing to determine the legality of the search, and to establish why relator's court-appointed counsel failed to object at trial to the introduction into evidence of the fruits of the search here attacked, Maldonado v. Eyman, 377 F.2d 526 (C.A. 9, 1967), and the facts underlying the alleged ineffectiveness of counsel.

The background facts of the legal contentions are fairly simple. In the course of a police investigation of a series of burglaries of several supermarkets and a gas station (all with similar methods of operation), an informant told detectives that Charles and Robert Milburn were overheard discussing these crimes. The two brothers were brought in for questioning. Subsequently, at about 9 p.m. on January 16, 1967, the police obtained two search warrants, one for the Milburns' residence, and another for the residence of one Lester Winger. Both searches proved fruitless. At about 11:15 p.m. on the same night, police obtained a search warrant for relator's apartment at 538 South Lime Street, Lancaster, Pennsylvania, for both the first floor which he rented and the basement, which he did not. The search warrant was issued on the basis of the following affidavit:

"Robert Milburn, under arrest for suspicion of recent burglaries, to wit: above mentioned burglaries, is known to frequent the apt. of HENDERSON. Robert Milburn's brother Charles Milburn says that he suspects Robert Milburn & Henderson committed these burglaries and suspects that they have the proceeds of these burglaries hidden in Henderson's apt. Officer believes this information to be true and correct."

Under color of this affidavit and warrant, two searches were conducted: one of the basement apartment and the other of the first floor apartment. Neither need detain us long. As to the basement, relator steadfastly contended at trial that he was not the lessee or occupant of that apartment. He cannot now be heard to complain of the search. United States ex rel. Watson v. Common Pleas Court, 265 F. Supp. 305, 306, aff'd, 385 F.2d 401 (C.A. 3, 1967). As to the first floor search, the Commonwealth concedes the gross insufficiency of the affidavit, as indeed it must. Spinelli v. United States, 393 U.S.

---

1. Because we have decided that the affidavit supporting the search warrant is constitutionally defective, we will not treat the second alleged ground of the search's invalidity.

410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

We turn, then, to the real questions, one intertwined with the other: (1) was there a waiver of relator's right to object to the admittedly unconstitutionally seized evidence; (2) did relator have adequate representation at trial.

At relator's trial, his court-appointed counsel interrupted the testimony of Detective Geesey, in charge of the initial search, and requested a side-bar conference. After that conference, the following colloquy transpired:

> "MR. DANFORTH [relator's counsel]: Detective Geesey, did you ever obtain a search warrant enabling you to search any part of premises. 538 South Lime Street, Lancaster, Pennsylvania, in order to find any articles that were suspected as being stolen from the service station?
>
> "THE WITNESS: Yes, sir, the one I just showed to attorney Going.
>
> "MR. GOING [co-defendant's counsel]: This is the one on the 16th?
>
> "THE WITNESS: Yes, sir, for 538 South Lime Street on the 16th.
>
> "THE COURT: All right, proceed.
>
> "MR. NEWCOMER [District Attorney]: You are satisfied that the search warrant is proper, Mr. Danforth?
>
> "MR. DANFORTH: Yes." [2]

At our hearing, relator's trial counsel stated that he was unable to remember whether he saw the search warrant before the trial,[3] but that he and Mr. Going reviewed the search warrant during the "off the record" portion of the trial transcript.[4] Mr. Danforth testified at our hearing as follows:

> "Q. [Mr. Swain] Do you recall what you based your judgment on that the warrant was proper?
>
> "A. No, I don't.

> "Q. And you don't recall any specific inquiry on the issue of probable cause?
>
> "A. No.
>
> "Q. I would therefore ask or is it correct. to say then that it was not part of your strategy to avoid some objection to it on this ground?
>
> "A. I can't answer that. I don't know. I don't recall.
>
> "Q. You don't recall that at all?
>
> "A. No." [5]

And later the following exchange took place:

> "Q. [Mr. Swain] I just want to go one last time into this issue of trial strategy.
>
> I take it it is your testimony that at no time do you recall a situation where you would have failed to object out of trial strategy?
>
> "A. I do not recall that situation.
>
> "Q. Is it possible that that might have happened?
>
> "A. I would say it is possible but a rather remote possibility.
>
> "I think my basis for not asking for a suppression hearing going further into the matter was probably in some respect due to my conversation with Officer Geesey and Mr. Going as to the validity of the whole matter of the affidavit, the warrant and the service, that it would be futile to attempt to attack it." [6]

The Commonwealth has not suggested any sensible reason, nor can we, for counsel's failure at trial to object to the introduction of any of the items seized in this search.

There is an apparent dichotomy as to the effect on defendant's rights of counsel's action or failure to act where the defendant does not participate in the decision. Thus, in Henry v. Mississippi, 379 U.S. 443, 451–452, 85 S.Ct. 564,

---

2. State Notes of Testimony, pp. 105–106.

3. Federal Notes of Testimony (hereinafter "Fed. N.T."), p. 83.

4. *Id.* at 85–86.

5. *Id.* at 86–87.

6. *Id.* at 91–92.

569, 13 L.Ed.2d 408 (1965), decided on direct appeal, the Court said:

> " * * * If either [strategic] reason motivated the action of petitioner's counsel, and their plans backfired, counsel's *deliberate choice of the strategy would amount to a waiver binding on petitioner* and would preclude him from a decision on the merits of his federal claim either in the state courts or here. * * * we think that the deliberate bypassing by counsel of the contemporaneous-objection rule * * [would preclude the accused from asserting constitutional claims]." (Emphasis added.)

On the other hand, when the issue of waiver is presented in the context of federal habeas corpus, "[a] choice made by counsel not participated in by the petitioner does not automatically bar relief." Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963). Nevertheless, even habeas corpus courts have quite generally held that absent a showing of ineffective representation, the accused is bound by his counsel's trial decisions. *See, e. g.,* Pope v. Swenson, 395 F.2d 321, 323–326 (C.A.8,1968); United States ex rel. Machado v. Wilkins, 351 F.2d 892 (C.A.2,1965); Nelson v. California, 346 F.2d 73, 77–81 (C.A.9, 1965); Jarrel v. Boles, 272 F.Supp. 755, 757, n. 1 (N.D.Va., 1967). *But see,* United States ex rel. Cornitcher v. Rundle, 285 F.Supp. 625, 629 (E.D.Pa., 1968), aff'd, 406 F.2d 773 (C.A.3,1969). And see Henry v. Mississippi, supra, 379 U.S., at 448, n. 3, 85 S.Ct. 564.

It seems to us that the real question is whether the action or inaction of counsel was a "deliberate choice of strat-egy." [7] The very word "strategy" connotes a knowledgeable and reasoned choice, for a reason. Where, as here, counsel was apparently unaware of the palpable deficiencies of the search warrant, his abandonment of petitioner's constitutional right could not be knowledgeable and could have served no reasoned purpose. Under the Henry test, then, it could not be characterized as a "deliberate choice of trial strategy." It was neither deliberate nor a choice. *Compare,* Pope v. Swenson, 395 F.2d 321, 323 (C.A.9,1968), *and* Nelson v. California, 346 F.2d 73, 82 (C.A.9,1965) (counsel's decision held "quite reasonable"). Not only could no possible tactical advantage have resulted from the introduction of items stolen in the burglaries and found in relator's apartment; their introduction required relator to explain the presence of many stolen goods —a substantial prejudice. This error clearly was not harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). While the failure to object might have been an adequate state ground sufficient to preclude attack on direct appeal, it was not a waiver barring federal collateral attack, where the question of waiver "is itself a federal question." Henry v. Mississippi, *supra,* 379 U.S., at 447, 85 S.Ct. 564.

However, this Circuit has said unmistakably that "unless his counsel was ineffective, [relator's] illegal search and seizure claim must be deemed to have been waived." United States ex rel. Powell v. Rundle, 370 F.2d 331 (C.A.3, 1967). And we have no difficulty in concluding, federal standards of waiver

---

7. This approach is merely the application of the same principles used in evaluating an accused's waiver to the evaluation of counsel's waiver. See United States ex rel. Bolognese v. Brierley, 412 F.2d 193 (C.A.3, filed May 28, 1969):

> "To determine the presence of waiver under these tests [Fay v. Noia, *supra,* and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)] there must be some evidence of an intelligent and intentional act. At the very least,

this requires an understanding *by the actor* that there exists a right which is the subject of choice. One cannot waive a right of which he has no knowledge. * * *" (Emphasis added.)

See also, Comment, 54 Calif.L.Rev. 1262, 1276 (1966): "[I]f the accused must make a knowing and intelligent waiver, his attorney should be held to the same standard, since either party's waiver may substantially affect the outcome of the trial."

aside, that where there is no reasonable basis for the failure to raise a clear constitutional right and there is manifest prejudice, counsel was ineffective and inadequate. Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 604, 235 A.2d 349 (1967). Such was the case here. Nor is this failure the only instance of inadequacy. Counsel failed to tell relator that he was entitled to appointed counsel on appeal.[8] Further, he relied in large part for his acquiescence in the admission of the illegally seized evidence upon counsel for the co-defendant,[9] who had no standing to object to the search. We conclude that the relator's rights under both the Fourth and Sixth Amendments were violated, and that no notion of waiver precludes the vindication here of those rights.

After relator was taken into custody on January 16, the police searched his car and conducted a second search of his apartment. Items seized in those searches were introduced into evidence. Both searches raise questions of "taint", —that is, whether they are the "fruits of the poisonous tree", Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Nardone v. United States, 308 U.S. 539, 60 S.Ct. 103, 84 L.Ed. 454 (1939); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), and as such render the items seized inadmissible. Both supporting affidavits contain references both to the evidence seized in the first search, and to independent sources of information which might possibly cure the initial illegality of the first search. On this issue we intimate no view, since on the basis of what we have already discussed we think the relator is entitled either to his release or a new trial. This issue has never been presented to the state courts, and any inquiry of taint is one properly conducted by the state trial court should there be a retrial and should the question then be raised.

The court is indebted to Clifford H. Swain, Esquire, who, without compensation, represented the relator ably and in the highest tradition of the Bar.

## ORDER

And now, this 16th day of June 1969, it is ordered that the petition for writ of habeas corpus be and it hereby is granted. The execution of the writ will be stayed for a period of sixty (60) days

8. Fed. N.T. p. 44 (relator's testimony). Counsel's testimony on this issue was unclear, but we think it supports relator's understanding of what occurred, which we believe.

"Q. [Mr. Swain] Do you recall, do you have any positive recollection of what you advised him?

"A. No.

"Q. Would you have advised him that he had a right to free counsel on appeal?

"A. Certainly. I had been his free counsel up to that point and I would assume that I would take the appeal for him.

Whether or not I in so many words said to him that 'You will have free counsel if you want to take an appeal' I can't recall but it certainly appeared to me that that would be his logical assumption.

"Q. That if you told him that you had a right to appeal that he would have the right to have you.

"A. That's right.

"Q. As free counsel on appeal?

"A. Yes.

BY THE COURT:

"Q. Are you speaking now, Mr. Danforth, about—or are you distinguishing, let me put it this way, between the right to appeal and the right to file motions for a new trial and arrest of judgment?

"A. I use the words synonymously. I should be referring to—instead of appeal I should be referring to the filing of post-trial motions." *Id.* at 89–90.

9. See text accompanying note 6, *supra.* See also Fed. N.T. at 85:

"A. [Relator's trial counsel] I might interject here, that I discussed this with you [Mr. Swain] when we talked earlier. There was retained co-counsel in this case.

Mr. Going had been retained by the co-defendants and I would not be surprised that I relied somewhat on his preparation, that type of thing, at the time."

to afford the Commonwealth an opportunity to appeal or to re-try the relator. In the event that the Commonwealth appeals, any further stay of this Order beyond sixty (60) days from the date hereof shall be sought only in the Court of Appeals. Absent an appeal and further stay within sixty (60) days, or a re-trial of petitioner within sixty (60) days, at the expiration of said period, relator shall be released from custody.