Herbert Gene SALISBURY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Court of Appeals of Kentucky.

Aug. 12, 1977.

Discretionary Review Denied
Nov. 14, 1977.

Robert F. Stephens, Atty. Gen., Carl Miller, Asst. Atty. Gen., Frankfort, for appellee.

Jack Emory Farley, Public Defender, Larry H. Marshall, Asst. Public Defender, Frankfort, for appellant.

Before GANT, LESTER and PARK, JJ.

PARK, Judge.

The indictment in this case charged that the defendant-appellant, Herbert Gene Salisbury, murdered Crit Butler on October 22, 1974, by shooting him with a pistol. Following a trial of the case in the Floyd Circuit Court, a jury returned a verdict finding Salisbury guilty of voluntary manslaughter and fixing his maximum term of imprisonment at thirteen years. Salisbury appeals from the judgment entered by the circuit court on the jury verdict.

As his first ground for reversing the judgment of conviction, Salisbury argues that the trial judge erred in declining to disqualify himself from presiding over the case. In his motion to require the trial judge to vacate the bench, Salisbury's trial counsel stated:

"That the victim, Crit Butler was the son of Bessie Martin Butler, who was the daughter of Crit Martin, after who the victim was named, and Zella Martin; that Judge Hollie Conley married Minnie Martin Conley, who is blood relation to the victim, or married relation to the victim, Crit Butler, herein, and Herbert Gene Salisbury, the legal husband of Diane Rector Salisbury, and to the defendant herein."

This argument is without merit for two reasons. First, the affidavit in support of the motion to vacate fails to show the degree of relationship between the trial judge's wife and the victim, Crit Butler. In the absence of an allegation of the degree of relationship, an appellate court cannot hold that a trial judge erred in refusing to disqualify himself on the grounds of relationship. Second, the motion to vacate the bench came too late. Salisbury was represented by counsel at his arraignment on January 28, 1975, at which time he entered a plea of not guilty. The case was assigned for trial on April 28, 1975, by an order entered April 10, 1975. On April 25, 1975, Salisbury's trial counsel made a motion for a continuance. The motion to vacate the bench was not filed until April 28, 1975.

There is nothing in the record to indicate that the relationship between the trial judge's wife and the decedent was unknown to Salisbury prior to April 28, 1975. The motion to vacate the bench was not seasonably made. *Neace v. Commonwealth*, 233 Ky. 545, 26 S.W.2d 489 (1930).

For his second argument for reversal, Salisbury asserts that the record was insufficient to sustain a verdict of guilty of voluntary manslaughter. Salisbury claims that his own voluntary intoxication was a complete defense to the prosecution and that, in any event, there was no evidence which would justify the giving of a voluntary manslaughter instruction.

Butler was shot around four o'clock in the morning following a night of drinking and card playing by Salisbury, Butler and a third person, Ed Wright. There was very little dispute in the evidence respecting the circumstances leading up to the shooting. All three men were armed. Butler had been losing at cards, and an argument arose over the division of a pot. According to Salisbury who testified on his own behalf, Butler suddenly jumped up from the table with a gun in his hand, and he shot Butler in the face in self-defense. Salisbury testified further that Wright administered the coup de grace by shooting Butler in the head as he lay writhing on the floor. According to Wright, Butler did not have a gun in his hand when he was shot, and Salisbury fired all of the shots. State Trooper Estep testified that he found Salisbury "passed out or asleep" when he arrived at the scene and that a breathalizer test administered at 10:00 a. m. registered a blood alcohol ratio of .21% by weight. Salisbury also testified that he was intoxicated at the time of the shooting.

The evidence in the case indicates that Salisbury was intoxicated at the time of the shooting. However, the evidence is not so overwhelming as to compel a finding by the jury as the trier of fact that Salisbury was intoxicated to the degree that he did not know what he was doing. Salisbury testified to the circumstances of the shooting. He claimed self-defense for the shot he

fired and attempted to blame Wright for the fatal shot. Salisbury was not entitled to a directed verdict because of his voluntary intoxication.

Salisbury also claims that he could not properly be convicted of the offense of voluntary manslaughter. It is true that intoxication alone is not sufficient to reduce a homicide from murder to voluntary manslaughter. See *Richards v. Commonwealth*, Ky., 517 S.W.2d 237 (1974), and *Elmore v. Commonwealth*, Ky., 520 S.W.2d 328 (1975). However, the opinions in the *Richards* and *Elmore* cases also state that a voluntary manslaughter instruction is proper if, in addition to the evidence of intoxication, there is evidence that the shooting occurred in sudden affray or sudden heat of passion. According to Salisbury's own testimony, the argument over the card game was followed by Butler's standing up with a gun in his hand. An instruction on voluntary manslaughter was proper.

■ For his third grounds for reversal, Salisbury attacks the methods used by the attorney for the Commonwealth to buttress the credibility of Wright's testimony and at the same time undermine Salisbury's credibility. At various stages in the trial, the Commonwealth's attorney directed the jury's attention to the fact that Wright gave the same story to the police immediately following the shooting as he gave from the witness stand. Wright's consistency was contrasted with Salisbury's request for an attorney and his silence at the time of his arrest. In the opening statement, the Commonwealth's attorney stated:

> "The defendant said he wanted to see a lawyer and that was his right, and after he said that there wasn't anybody that questioned him. And Ed Wright talked."

During the examination of State Police Detective Rose, the Commonwealth's attorney brought out the fact that Wright gave a voluntary statement after he had been arrested and advised of his constitutional rights. The Commonwealth's attorney did not go into the question of Salisbury's silence in his examination of the arresting officer, State Trooper Estep. During his cross-examination of Salisbury, the Commonwealth's attorney unsuccessfully attempted to extract from Salisbury an admission that the police had asked him what had happened. Salisbury replied: "They advised me of my rights is all."

In his closing argument, the Commonwealth's attorney returned to his theme first raised in the opening statement. With respect to the closing argument, the record reveals:

> "Mr. Hammonds has made a great argument here about the fact that we took Ed Wright's statement and we didn't take Gene Salisbury's . . .
>
> *MR. HAMMOND:* (Counsel for defendant) Your Honor, I made no comment about that.
>
> *THE COURT:* Sustained.
>
> *MR. STUMBO:* (Attorney for Commonwealth) Now, let me ask you this question. *How are you going to talk to a man when he won't talk to you? The defendant never would talk to you. He waits until he gets in the courtroom to come up with his side of the story. And at the time Ed Wright gave that story to Detective Rose over there he gave him a statement similar to what he testified here in this trial.*
>
> *MR. HAMMOND:* (Counsel for defendant) Your Honor, there's no proof to that.
>
> *MR. STUMBO:* (Counsel for plaintiff) We've got proof to that. He testified to that.
>
> *THE COURT:* Overruled, Detective Rose testified to that.
>
> *MR. STUMBO:* He gave it. He gave us a statement similar to what he testified to and he gave it the day of the shooting. The day after the shooting he gave a statement on the day of the shooting. I'll correct that. He gave it to Detective Rose and he was advised of his rights too like Salisbury was. But, he didn't say, 'I want a lawyer.' He gave it to us. And at that time there was no promise give to him of immunity. At that time there was no promise of immunity to him. Now, all up until this time, at the time of the examining trial, *Ed Wright has testi-*

**926**

*fied essentially the same story."* (emphasis added)

■ The methods used by the Commonwealth's attorney to impeach Salisbury's credibility were objectionable. When a criminal defendant has received *Miranda* warnings following arrest, his subsequent silence cannot be used to impeach his testimony at trial. *Niemeyer v. Commonwealth,* Ky., 533 S.W.2d 218 (1976); *Cessna v. Commonwealth,* Ky., 465 S.W.2d 283 (1971); *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The difficulty in this case arises from the fact that Salisbury's trial counsel did not make any objection to the Commonwealth's use of the defendant's silence following his arrest. Under very similar circumstances, this state's highest court has held that the Commonwealth's argument was not subject to appellate review in the absence of an objection at the trial level. *Minor v. Commonwealth,* Ky., 478 S.W.2d 716 (1971). However, this court is also aware that federal courts do not consider themselves similarly limited in habeas corpus proceedings by a failure to object at the trial level. The very conviction affirmed in the *Minor* case was set aside by the United States Court of Appeals in *Minor v. Black,* 527 F.2d 1 (6th Cir. 1975). This court also takes note of the recent decisions of the Supreme Court which indicate that a failure to object at the trial level may bar review of an error by the federal courts. *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976).

■ Salisbury's appellate counsel asserts that the conviction may be set aside under the "palpable error" rule without regard to the absence of an objection at the trial level. RCr 9.22 which requires contemporaneous objections is a salutary rule because it gives the trial judge an opportunity to remedy any errors in the proceedings. As Chief Justice Burger stated in *Estelle v. Williams, supra* :

"The reason for this rule is clear: if the defendant has an objection, there is an obligation to call the matter to the court's attention so that the trial judge will have an opportunity to remedy the situation." 425 U.S. 501, 508 n.3, 96 S.Ct. 1691, 1695.

In many circumstances a timely objection by the defendant will permit the Commonwealth to produce additional testimony in order to establish that the evidence in question is properly admissible. *Sykes v. United States,* 373 F.2d 607 (5th Cir. 1966), cert. den., 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138; *State v. Woods,* 5 Wash.App. 399, 487 P.2d 624 (1971).

■ Notwithstanding the contemporaneous objection rule embodied in RCr 9.22, an appellate court can consider a "palpable error" which affects the "substantial rights" of a defendant even though the error was insufficiently raised or preserved on the trial level. CR 61.02 (as made applicable to criminal proceedings by RCr 13.04); *Stone v. Commonwealth,* Ky., 456 S.W.2d 43 (1970). Applying the standards of CR 61.02, the Commonwealth's comment on Salisbury's silence following his arrest was not a harmless error, but rather involved "substantial rights" of the defendant. The jury was required to determine whether it should believe Salisbury's testimony or the testimony of the witness Wright. The Commonwealth's comparison of Salisbury's silence with Wright's voluntary statement at the time of his arrest went to the vital issue in the case, the credibility of the two persons present at the shooting. The only remaining question is whether the Commonwealth's comment constituted "palpable error" requiring a reversal of the conviction.

■ Even though Salisbury's substantial rights were involved by the Commonwealth's comment on his post-arrest silence, it does not necessarily follow that there was palpable error. During the trial of a criminal case, there are many strategic and tactical decisions which must be made by the defendant's counsel in the "heat of battle." Many of these decisions will have constitutional implications. During the trial itself, the burden of raising those constitutional questions rests primarily on the shoulders of the defendant's trial counsel. As Chief Justice Burger stated:

"Under our adversary system, once the defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would re-write the duties of trial judges and counsel in our legal system." *Estelle v. Williams, supra,* 425 U.S. at 512, 96 S.Ct. at 1697.

When a defendant's attorney is aware of an issue and elects to raise no objection, the attorney's failure to object may constitute a waiver of an error having constitutional implications. In the absence of exceptional circumstances, a defendant is bound by the trial strategy adopted by his counsel even if made without prior consultation with the defendant. The defendant's counsel cannot deliberately forego making an objection to a curable trial defect when he is aware of the basis for an objection. See the concurring opinion of Justice Powell, *Estelle v. Williams, supra,* 513–515, 96 S.Ct. 1691, *Henry v. Mississippi,* 379 U.S. 443, 451–52, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). If a defendant's counsel could not waive constitutional issues by failing to object during the course of a trial, the trial judge would be placed in an impossible position. In discussing the effects of such a rule the Supreme Court of Alaska stated:

"Not only would it hamper the attorney, it might force the trial judge to interrupt the proceedings whenever a waiver might be occurring in order to protect the record on appeal. If the judge did not do so, the defendant could later challenge his conviction by asserting that he had not consented to the waiver. In addition, such a procedure would distract and confuse a jury. If carried far enough, it

could not only slow a trial to a snail's pace, but it might also involve the judge in the conduct of the defense to an unacceptable degree." *Lanier v. State,* 486 P.2d 981, 987 (Alaska 1971).

This court will not adopt a rule which would require the trial judge to stop the trial whenever a possible constitutional issue is raised in order to inquire of counsel and the defendant whether a waiver is intended.

█ A defendant will not always be bound by his attorney's failure to object. When the question of waiver arises in a non trial context, the trial judge may have much greater responsibilities to insure that there has been a knowing waiver of constitutional rights by the defendant himself. E. g. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (guilty plea). In holding that a defendant's counsel can bind the defendant by failing to make an objection on constitutional grounds during trial, this court assumes that the defendant's attorney was aware that there was an "arguable basis" for such an objection.[1] Compare *Kuhl v. United States,* 370 F.2d 20 (9th Cir. 1966), with *Pineda v. Craven,* 424 F.2d 369 (9th Cir. 1970). If the defendant's attorney is completely unaware that there may be an objection which clearly affects the substantial rights of his client, a serious question may be raised whether the defendant was denied effective assistance of counsel. See *United States ex rel. Henderson v. Brierley,* 300 F.Supp. 638 (E.D.Pa.1969).

The record in this case fails to reveal the reason why no objection was made to the Commonwealth's comment on Salisbury's silence following his arrest. In this connection it may be significant on the question of

---

1. "It is seldom that counsel can really 'know' that a constitutional objection, on fourth amendment grounds, is good, either as a matter of fact or as a matter of law. He may believe that it is; he may hope that it is; he may think that it is not. As to any of these views, he may be mistaken. It is for him to decide, whichever of these views he holds, and even if he 'knows' that the claim is good, whether he will assert the claim. If he does so, he may be more or less surprised to find that the court does or

does not agree with him. If he decides not to do so, his decision is still 'an intentional relinquishment or abandonment of a known right or privilege' (*Fay v. Noia,* 1963, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837). The 'known right or privilege', in such a case as this, is the right or privilege of presenting the contention to the court and getting a ruling on it." *Kuhl v. United States,* 370 F.2d 20, at 25–26 (9th Cir. 1966)

the defendant's counsel's awareness of the issue that he went into the subject while cross-examining State Trooper Estep. The record reveals:

"RE-CROSS EXAMINATION BY: Jim Hammond (defendant's counsel)

Q 107 Did he make any comment to you at all that morning?

A Yes, the only thing he said when I advised him of his rights, he said, I want to see my lawyer or a lawyer, and that's all he said and I said, o. k., we're going down to the car.

Q 108 And did you tell him that he had that right?

A I advised him of his right.

Q 109 You told him, you advised him he had a right to be silent, that he had a right to an attorney?

A That's right.

Q 110 And did you take it that be responded in that manner because of your diligent reading to him of his rights?

A That was my understanding."

The record does not contain the closing argument made by the defendant's trial counsel so this court cannot know what reference, if any, he made to the subject at that time.

 This court cannot determine whether the defendant's trial counsel failed to object as a matter of trial tactics, whether he deliberately withheld making an objection in the hopes that reversible error would slip into the record, or whether he was unaware that there was a possible objection. Consequently, Salisbury has not demonstrated that there was palpable error. As the merits of the issue cannot be reached on direct appeal with the present record, Salisbury is not foreclosed from raising the issue in further proceedings pursuant to RCr 11.42. In such proceedings the trial court would, for the first time, have an opportunity to determine whether there had been a valid waiver of the defendant's constitutional objection.

For the foregoing reasons, the judgment is affirmed.

All concur.

## ON PETITION FOR REHEARING

Our opinion in this case is supported by the subsequent decision in *Wainwright v. Sykes,* —— U.S. ——, 97 S.Ct. 2497, 2507–8, 53 L.Ed.2d 594 (1977) rendered by the Supreme Court of the United States on June 23, 1977. The opinion of the Court states:

A contemporaneous objection rule may lead to the exclusion of the evidence objected to, thereby making a major contribution to finality in criminal litigation. Without the evidence claimed to be vulnerable on federal constitutional grounds, the jury may acquit the defendant, and that will be the end of the case; or it may nonetheless convict the defendant, and he will have one less federal constitutional claim to assert in his federal habeas petition. * * * An objection on the spot may force the prosecution to take a hard look at its whole card, and even if the prosecutor thinks that the state trial judge will admit the evidence he must contemplate the possibility of reversal by the state appellate courts or the ultimate issuance of a writ of federal habeas corpus based on the impropriety of the state court's rejection of the federal constitutional claim.

We think that the rule of *Fay v. Noia,* broadly stated, may encourage 'sand bagging' on the part of defense lawyers, who may take their chances on a verdict of not guilty in a state trial court and intend to raise their constitutional claims in a federal habeas court if their initial gamble does not pay off. The refusal of federal habeas courts to honor contemporaneous objection rules may also make state courts themselves less stringent in their enforcement. Under the rule of *Fay v. Noia, supra,* state appellate courts know that a federal constitutional issue raised for the first time in the proceeding before them may well be decided in any event by a federal habeas tribunal. Thus

their choice is between addressing the issue notwithstanding the petitioner's failure to timely object, or else face the prospect that the federal habeas court will decide the question without the benefit of their views.

The failure of the federal habeas courts generally to require compliance with a contemporaneous objection rule tends to detract from the perception of the trial of a criminal case in state court as a decisive and portentous event. A defendant has been accused of a serious crime, and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding; the accused is in the court room, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turns to testify. Society's resources have been concentrated at that time, and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous objection rule surely falls within this classification.

* * * There is nothing in the Constitution or in the language of § 2254 which requires that the state trial on the issue of guilt or innocence be devoted largely to the testimony of fact witnesses directed to the elements of the state crime, while only later will there occur in a federal habeas hearing a full airing of the federal constitutional claims which were not raised in the state proceedings. If a criminal defendant thinks that an action of the state trial court is about to deprive him of a federal constitutional right there is every reason for his following state procedure in making known his objection.

The petition for rehearing is DENIED.

ALL CONCUR.