925 S.W.2d 449 (1995)
Blaine MILLER, Appellant,
v.
COMMONWEALTH of Kentucky, Appellee.
No. 94-SC-217-MR.
Supreme Court of Kentucky.
September 21, 1995.
Withdrawn and Reissued June 20, 1996.
As Modified August 13, 1996.
*450 Susan Jackson Balliet, Prospect, Charles E. Ricketts, Jr., Ricketts & Travis, Louisville, for appellant.
A.B. Chandler, III, Attorney General, Karen Quinn, Assistant Attorney General, Criminal Appellate Division, Frankfort, for appellee.
STUMBO, Justice.
This appeal arises from the judgment of conviction of Appellant, Blaine Miller, for two counts of first-degree sexual abuse, and one count each of kidnapping, terroristic threatening, and indecent exposure. Appellant was sentenced to a total of twenty years' imprisonment, with the lesser misdemeanor charges to run concurrently with the kidnapping and sexual abuse charges.
Appellant was charged with conduct alleged to have occurred on or about June 28, 1993 and July 16, 1993 relating to a then six-year-old girl who lived in his apartment complex. Specifically, Appellant, 35-years-old at the time of the acts in question, was accused of forcing the child into his apartment, tying her to a chair, and sexually molesting her. Appellant raises six issues on appeal, one of which, to be discussed first, rises to that level of prejudice as to warrant reversal in this matter.
At trial, the jury heard the testimony of Dr. Jacqueline Sugarman, a doctor from Kosair Children's Hospital to whom the child had been referred by her family physician. Dr. Sugarman first stated that the child had come to her for "evaluation of sexual abuse," but, upon questioning by the Commonwealth, explained that her purpose in seeing the girl was to "treat" her. However, the doctor *451 testified that she had seen the child only once  about six months prior to the trial, on August 20, 1993  for a total of one hour, and had neither prescribed medication nor given the girl any counseling. Over objection by the defense, Dr. Sugarman testified that the child named Appellant as the person who had rubbed his penis against her arm, had threatened her with a gun, and had touched her genital area with his fingernail. Dr. Sugarman further noted that there was a thinning of the hymenal area of the girl which suggested that the vagina "may" have been penetrated with a blunt object  which "could have been a finger or a penis, or pencil, whatever." In addition to her testimony, records maintained by Dr. Sugarman, containing additional statements by the child, were admitted into evidence.
Appellant objects to the testimony of Dr. Sugarman primarily on the grounds that she was not the child's treating physician. In particularly, Appellant points out that Dr. Sugarman initially testified that the child had come to her for evaluation and that it was not until the prosecution reminded her that her purpose in seeing the child was for treatment that Dr. Sugarman did so state. Appellant also emphasizes that Dr. Sugarman met with the girl only once, for about an hour, during which time no medication was prescribed nor counselling given. In addition, Appellant argues that this August 20, 1993 examination was too remote in time from the alleged events. The Commonwealth contends, on the other hand, that Dr. Sugarman was, in fact, the child's treating physician and that, to wit, her testimony and records were properly admitted pursuant to the hearsay exceptions contained within KRE 803(4). In the alternative, the Commonwealth argues that the probativeness of Dr. Sugarman's testimony clearly outweighed any prejudice to Appellant, thus, allowing for its admission. Drumm v. Commonwealth, Ky., 783 S.W.2d 380 (1990). We do not agree with either proposition.
To begin, we find very little difference between Dr. Sugarman's intervention in this case and that of the physician in Sharp v. Commonwealth, Ky., 849 S.W.2d 542 (1993). In Sharp, a similar case involving child sexual abuse, the psychiatrist called on behalf of the Commonwealth "indicated generally that he saw the children to evaluate, diagnose, and treat them, but from the substance of his testimony, it is clear that he was not a treating physician as that term is normally understood." Id. at 543. Such may, in turn, be said of Dr. Sugarman, for, by her own admission, she saw the child only once to perform an "evaluation of sexual abuse," wherein neither medication nor counseling was given. Also, the physical examination conducted by Dr. Sugarman revealed basically normal results. The only difference between Dr. Sugarman and the physician in Sharp is that while Social Services arranged for the examination in Sharp, here the child's family physician made the referral.
As Dr. Sugarman was not a treating physician, the test to be applied is whether, from the totality of the circumstances, the probative value of the evidence outweighs its prejudicial effect. Sharp, supra, at 544; see also Drumm, supra. In weighing such probative value, Sharp advises that other indicia of reliability may be considered. For example, do the physical findings made by the physician during the examination correlate with the abuse alleged by the patient? In the case at bar, the only physical finding made by Dr. Sugarman which comes close to indicating reliability is some thinning of the hymen which "may" have been caused by penetration. However, at trial the child's description of the alleged abuse in no way suggested any contact with her genitals, much less penetration.
This was an exceptionally weak case for the prosecution. The only evidence of Appellant's guilt was the vague testimony of the child given in response to leading questions. With the evidence in such a state, the improperly admitted testimony of Dr. Sugarman, which had the undeniable effect of bolstering the child's testimony, was severely prejudicial. The medical records provided by Dr. Sugarman were likewise inadmissible. Therefore, the judgment of conviction is reversed and this case remanded for a new trial.
*452 While the other arguments advanced by Appellant do not so move this Court to find error, we will nonetheless dispose of each briefly. First, Appellant argues that the trial judge abused his discretion by not recusing himself. Defense counsel sought to disqualify presiding Circuit Court Judge Thomas L. Waller on the grounds of bias in that the judge's wife had been a supervisor in the Cabinet for Human Resources, Child Protection Division, at the time of its initial investigation into this matter. The defense also took issue with comments made by the judge concerning the necessity for "cases of this nature"  presumably child sexual abuse cases  to be tried in a speedy fashion. Judge Waller denied the defense's motion in a written order, citing to KRS 421.510 and also stating that he did not believe his wife's former position with CHR was grounds for recusal.
We have traditionally held that a party who seeks recusal or disqualification of a trial judge has a heavy burden of proof to demonstrate "facts which necessarily show prejudice or bias sufficient to prevent the judge from fairly or impartially trying the case." Johnson v. Ducobu, Ky., 258 S.W.2d 509, 511 (1953). Appellant, in this matter, has failed to meet such a burden. For example, Appellant did not claim that the judge's wife was personally involved in the investigation, or that there was any connection at all between the wife of the judge and this case. In order to successfully seek recusal of a judge, there must be a showing of facts "of a character calculated seriously to impair the judge's impartiality and sway his judgment." Foster v. Commonwealth, Ky., 348 S.W.2d 759, 760 (1961). The issue of a claim of bias against a trial judge based upon circumstances surrounding his wife was raised in Salisbury v. Commonwealth, Ky.App., 556 S.W.2d 922 (1977), wherein the wife of the judge in that case was related to the murder victim. The Salisbury court held that the motion to vacate should show the degree of relationship between the trial judge's wife and the victim and that, in the absence of any allegation of such degree, "an appellate court cannot hold that the trial judge erred in refusing to disqualify himself on the grounds of relationship." Id. at 924. According to the decision in Salisbury, absence of these necessary facts precludes this Court from addressing whether the trial judge erred by failing to recuse himself. Such a holding applies with the same force in the case at bar.
Likewise, Appellant does not allege how he was impaired by the judge's comments concerning a speedy trial in this matter. The fact that the trial judge attempted to move the trial along in a speedy fashion, pursuant to the mandate of KRS 421.510 which provides for a speedy trial where a child victim is involved  does not exhibit bias against Appellant. Moreover, pursuant to RCr 9.02, "[t]he trials of all persons in custody under arrest shall be held as promptly as reasonably possible." "It is nothing short of fantastic to claim a circuit judge is biased against a particular defendant because he intends to apply the correct law to his case." Foster, supra, at 760. Neither can Appellant claim that he was unfairly rushed to trial as he was given more than 90 days in order to prepare. Such unsupported allegations of bias are insufficient to require the recusal of the trial judge in this matter, and, therefore, we do not find that any error occurred as to this issue.
Evidence as to the victim's having pulled on the trousers of the maintenance man at the apartment complex was not probative of any inappropriate sexual behavior with an adult male, or that she had used the sexual knowledge gained from such an experience to concoct the charges at issue. As such, it fails the test of relevancy and was properly excluded. From this evidence, we need not determine whether the rape-shield statute prevents admission of the evidence in question.
Appellant next maintains that he was denied a fair trial by the trial court's refusal to strike a juror who came forward during the course of the proceedings and alerted the court to her sudden remembrance that she and her husband lived next door to the apartment where the events at issue were alleged to have occurred. This juror also stated that her husband had dealings with Appellant's *453 brother, a prominent contractor and businessman within the community, regarding a water drainage problem which had yet to be corrected. Appellant contends that any attempt by the trial court to rehabilitate this juror by questioning her as to whether her experience with Appellant's brother would give her any problems in the deliberation of this matter  to which she replied in the negative  was ineffective. Appellant relies upon Montgomery v. Commonwealth, Ky., 819 S.W.2d 713, 716 (1991), for the proposition that "[m]ere agreement to a leading question. . . is not enough to discharge the court's obligation to provide a neutral jury." Appellant adds that as he was mislead by this juror's failure to provide a full account of her conflict with his brother during voir dire, he was likewise deprived of his right to make a jury challenge to her, both for cause and peremptory. Anderson v. Commonwealth, Ky., 864 S.W.2d 909, 911-912 (1993).
Although Appellant maintains in his brief that defense counsel called for a mistrial by requesting that this juror be removed, a careful examination of the record does not indicate that any such request or objection to this juror was, in fact, made. As such, this issue is not properly preserved for appellate review. RCr 9.22. All that transpired, according to the transcript of the proceedings, was that defense counsel merely stated that there was a "continuing conflict" between the juror and Appellant's brother. However, even had this issue been properly preserved, the relationship at issue appears so tenuous that it could not be deemed to have affected the impartiality of the juror. Sanders v. Commonwealth, Ky., 801 S.W.2d 665, 670 (1990); see also Sanborn v. Commonwealth, Ky., 754 S.W.2d 534 (1988); Ward v. Commonwealth, Ky., 695 S.W.2d 404 (1985). In addition, Appellant failed to show his ignorance of this issue at the time of the trial, as provided in Baker v. Commonwealth, Ky., 322 S.W.2d 119 (1959).
Next, Appellant argues that a mistrial should have been declared after an outburst by the complaining witness during the proceedings. While on the stand, the child broke into tears and was unable to continue testifying. A recess was granted during which time the girl left the courtroom in order to compose herself. However, her cries of "I don't want to. I don't want to," could still be heard in the courtroom. The child eventually returned to the stand where she testified without further difficulty. Appellant argues that he was prejudiced by this temporary loss of decorum in the courtroom. In particular, Appellant contends that the jury could not help but feel sympathy for the child after hearing how badly she was affected by having to endure this trial. Appellant even goes so far as to claim that this episode served to bolster the child's credibility as the jury was left to infer that she had become upset from having to tell the truth about the Appellant.
We, however, find no evidence that the trial judge abused his discretion in refusing to grant a mistrial in this situation. "In order for a mistrial, there must appear in the record `a manifest necessity for such an action or an urgent or real necessity.'" Skaggs v. Commonwealth, Ky., 694 S.W.2d 672, 678 (1985) (quoting Wiley v. Commonwealth, Ky. App., 575 S.W.2d 166 (1979)). In addition, we cannot ascertain that the actions of the child in the hallway rose to that level of impropriety which would likely influence the jury. Sharp v. Commonwealth, Ky., 849 S.W.2d 542 (1993). Sharp involved a third party who admitted to gesturing and to mouthing words of support to a child witness. A new trial was ordered in that case based upon a determination that the child "witness received encouragement, approval and comfort at the time her credibility was being assessed by the jury." Id. at 547. Sharp, however, is not applicable in this matter as there is no evidence that the child received any encouragement during her testimony. Absent any impropriety, such as the type present in Sharp, it was not an abuse of discretion for the trial court herein to allow the proceedings to continue. Moreover, as this Court held in Wilson v. Commonwealth, Ky., 836 S.W.2d 872, 890 (1992), another case involving an appellant's objection to an "emotional outburst" occurring at trial, "[t]he trial judge was in the best position to determine whether any remedial action was necessary to preserve decorum and ensure a fair trial."
*454 Finally, Appellant contends that his convictions for first-degree sexual abuse and for kidnapping violate both the so-called Kidnapping Exemption Statute and double jeopardy as these two convictions were based upon a single course of conduct. As to this first theory, Appellant argues that KRS 509.050 forbids piling a kidnap charge on top of a first-degree sex abuse charge, as that statute maintains, in pertinent part:
A person may not be convicted of . . . kidnapping when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incidental to the commission of that offense. . . .
As to this second theory, Appellant adds that the language in that statute merely codifies the aspect of double jeopardy which forbids double punishment for a single criminal act. Thus, under either theory, Appellant argues that the kidnapping conviction must be overturned. We do not agree.
To begin, this Court adheres to a strict interpretation of KRS 509.050 and maintains that "any restraint on a victim . . . must be close in distance and brief in time in order for the [kidnapping] exemption to apply." Smith v. Commonwealth, Ky., 610 S.W.2d 602 (1980). A review of the facts at issue reveal that the restraint of the victim  occasioned by Appellant forcing the child from the playground and into his apartment, and then tying her to a chair  was neither, pursuant to the language of KRS 509.050, immediate with nor incidental to the sexual abuse of the girl. In addition, the restraint of the child's liberty herein far exceeded that which was necessary for the sexual molestation to occur. Thus, Appellant's failure to jump through either of these two hoops articulated in KRS 509.050 amounts to "a failure to establish his entitlement to the benefit of the [kidnapping] exemption statute." Griffin v. Commonwealth, Ky., 576 S.W.2d 514, 516 (1978). As for Appellant's other theory herein, neither are we convinced that the facts support a double jeopardy claim. In Ingram v. Commonwealth, Ky., 801 S.W.2d 321, 322 (1990), this Court stated that the doctrine of double jeopardy served "to prohibit multiple punishments for the same offense." In determining that two charged offenses were to be deemed a single offense, the Ingram Court relied upon the criterion established by the U.S. Supreme Court in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), wherein "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Ingram, supra, at 322. Clearly, based upon this holding in Ingram, and upon other double jeopardy cases, such as Walden v. Commonwealth, Ky., 805 S.W.2d 102 (1991), there was no such constitutional violation in this matter, as separate proof was required to convict on the separate acts of kidnapping and of sexual abuse.
For the foregoing reasons, however, as the improperly admitted testimony of Dr. Sugarman was severely prejudicial, we reverse the conviction of Appellant and remand for a new trial, and for further proceedings consistent with this opinion.
STEPHENS, C.J., and BAKER and LAMBERT, JJ., concur.
KING, J., dissents by separate opinion, in which GRAVES and WINTERSHEIMER, JJ., join.
KING, Justice, dissenting.
Respectfully, I dissent from that portion of the majority opinion which holds that Dr. Sugarman was not the 6-year old victim's treating physician and that her testimony constituted reversible error.
Dr. Sugarman, a board-certified pediatrician, examined the child victim upon the referral of the child's family physician. During her testimony Dr. Sugarman stated that she: (1) examined the child for purposes of treatment; (2) conducted an examination and studies to determine if the child had any sexually transmitted diseases; (3) evaluated the child to determine if the child needed emotional counseling; and (4) having determined such a need existed, referred the child for counseling.
The majority's reliance upon Sharp v. Commonwealth, Ky., 849 S.W.2d 542 (1993), *455 is misplaced. The differences between Sharp and the present case are remarkable. Sharp is not applicable for four reasons: First, the testifying psychiatrist in Sharp was hired by a social agency which was conducting an investigation to determine if the children had been sexually abused. Second, it was clear from the psychiatrist's testimony that his conference with the children was not for the purpose of treatment but merely to assess the need for treatment. Third, the testimony presented by the physician in Sharp "disclosed information which had little or no relevance as to treatment." Fourth, the examination in Sharp was "remote in time from the event which may have given rise to the need for treatment." Id. at 543-44.
In the present case, the trial judge found Dr. Sugarman was the child's treating physician. Such a finding was clearly supported by the evidence and well within the trial court's sound discretion.
The majority's determination that Dr. Sugarman was not the child's treating physician does not end the inquiry. In Drumm v. Commonwealth, Ky., 783 S.W.2d 380 (1990), this Court adopted Federal Rule of Evidence 803(4) and held that the distinction between examining and treating physicians is not the sole criteria to determine the admissibility of patients' statements to their doctors.
This approach eliminates problems in applying the rules caused by the "treating physician" restriction, problems as to which interviews are treatment and which are not, problems as to whether the child is too young to realize she is receiving treatment. . . .
Id. at 385.
Subsequent to Drumm, KRE 803(4), which mirrors the federal rule, was adopted. That rule provides that statements are admissible when "made for purposes of medical treatment or diagnosis . . . insofar as reasonably pertinent to treatment or diagnosis." The fact that Dr. Sugarman only saw the child one time, prescribed no medication and personally conducted no counseling is not legally determinative of the admissibility of her testimony. The language of the rule makes it clear that it is the patient's "purpose" in speaking to the physician which is legally paramount, not the findings or actions of the physician.
When the patient's motive in visiting a physician is to obtain a medical diagnosis or medical treatment, the law recognizes the increased reliability of such a statement.
All that Drumm, supra, contemplates, is that a party offering such evidence lay sufficient foundation to show the relevance and reliability of the hearsay statements made by the victim, i.e., that circumstances surrounding the way the physician obtained these statements evinces their trustworthiness.
Jones v. Commonwealth, Ky., 833 S.W.2d 839, 841 (1992). In today's world it is difficult to imagine a more compelling reason to provide a physician accurate information than seeking a determination of whether or not one has a sexually transmitted disease.
The trial court found that, "considering the case as a whole, . . . the Court believes that the probative value of the evidence, as relates to the case history, outweighs any prejudicial effect to the defendant." This finding was supported by the evidence and within the sound discretion of the trial court.
GRAVES and WINTERSHEIMER, JJ., join this dissent.